### Barlow v. Fuller.

(Decided February 25, 1914.)

### Appeal from Bourbon Circuit Court.

1. Landlord and Tenant—Liens—Burden of Proof.—Where a landlord relied upon an alleged agreement with a mortgagee of the tenant's property, to the effect that the landlord's lien on that property should remain in force beyond the period prescribed by the statute, the burden was upon the landlord to prove the agreement; and he having been contradicted by the mortgagee, the landlord failed in his proof.

2. Landlord and Tenant—Liens—Crops.—Where a tenant during the period for which the lien of the landlord existed, delivered his interest in the crop to the landlord as security for advances made to the tenant by the landlord, the landlord's lien was thereby preserved, the legal effect of the transaction being the same as if the landlord had instituted legal proceedings to en-

force his lien and had acquired possession of the crop under process of the court.

E. M. DICKSON and HOLMES & ROSS, for appellants.

CLAUDE M. THOMAS and REUBEN HUTCHCRAFT for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This is a contest between R. B. Hutchcraft, the landlord, and S. T. Barlow, the mortgagee, of the tenant, Jesse Fuller.

In 1909 Fuller raised a crop of eight acres of tobacco upon Hutchcraft's farm under a contract by which Hutchcraft, the landlord, furnished the land and advanced $206 to Fuller for his living expenses and for the marketing of the crop. The crop was to be divided equally between Hutchcraft and Fuller. Under this contract Hutchcraft claimed a landlord's lien for the $206 under section 2323 of the Kentucky Statutes.

On June 24, 1909, Fuller mortgaged his one-half interest in the crop of tobacco, then growing, to appellant, S. T. Barlow, to secure the payment of a note for $250, due Barlow on January 1, 1910.

The only issue involved relates to the priority of the respective liens of Barlow and Hutchcraft upon Fuller's one-half interest in the tobacco. The chancellor gave Hutchcraft the priority, and Barlow appeals.

It is conceded that Hutchcraft had a landlord's lien under the statute; but appellant insists that Hutchcraft lost his lien because he failed to assert it within 120 days after the expiration of the lease, as is required by the statute. As Fuller's lease expired March 1, 1910, the 120 days during which the lien remained in force by virtue of the statute, expired on July 1, 1910.

Hutchcraft took no legal steps to preserve his lien, but insists that he still has priority over Barlow's mortgage for two reasons: (1) Because in June, 1910, while his lien was still in existence, he and Barlow agreed that Hutchcraft's lien should hold its precedence without his taking legal proceedings to continue it; and (2) because of an agreement between Fuller and Hutchcraft, entered into while the lien was still in force, by which Fuller turned over his interest in the crop to Hutchcraft with authority in the latter to sell it and pay the proceeds, first, to the discharge of Hutchcraft's lien; second, to the

discharge of Barlow's mortgage; and, third, to pay the remainder, if any there should be, to Fuller.

The proof as to the agreement between Hutchcraft and Barlow for the lien to continue in force without Hutchcraft's taking legal proceedings, shows that Charles Barlow, a brother of the appellant, called upon Hutchcraft, while his lien was still in force, for the purpose of collecting the money due on the Fuller mortgage to S. T. Barlow. Hutchcraft says Charles Barlow fully recognized Hutchcraft's lien; and upon Hutchcraft suggesting to him that it would be expensive and unnecessary to take legal steps to continue his lien, but that unless Barlow recognized it and would agree that it should continue without legal steps, he would proceed to secure his lien under the statute, Charles Barlow agreed to the extension. Charles Barlow testified that he was acting merely as the agent of his brother, the appellant, and without any right to make such a contract; that he made no such contract; but that he told Hutchcraft he would report the proposition to his brother, the appellant, and if appellant was willing to make the agreement, Charles Barlow would let Hutchcraft know. Nothing further passed between them.

The testimony as to the contract is thus sharply contradictory; Hutchcraft claiming that the agreement for the continuance of the lien was made, while Charles Barlow claims that no such agreement was made, but that he only offered to report the proposition to his brother, and that it was never accepted. The burden is upon Hutchcraft to show the agreement he relies upon; and conceding, for the argument, that Charles Barlow had authority to bind his brother, it appears that Hutchcraft has not established his alleged agreement by a preponderance of the evidence. His lien was therefore lost, unless it was saved by the agreement between him and Fuller.

That agreement, however, is fully shown by the testimony of Hutchcraft and Fuller, and was to the effect that Fuller surrendered the possession of the tobacco to Hutchcraft within the 120 days after the expiration of the lease and before the landlord's lien had expired, with authority in Hutchcraft to sell Fuller's interest in the tobacco and pay out the proceeds as above indicated. Hutchcraft carried out the agreement by shipping the tobacco to the Burley Society in August, 1910, in the name

of Hutchcraft & Fuller. It was there sold, and the proceeds are now held by the Burley Society, garnishee herein, subject to the order of court.

These facts bring the case squarely within the doctrine announced in Marquess v. Ladd et al., 30 Ky. L. R., 1143, 100 S. W., 305. In that case, as in this, Brandon, the landlord, did not enforce his lien within the time prescribed by the statute; but, under a contract made with Ladd, the tenant, and while the tobacco was upon the leased premises, Brandon took possession of the crop of tobacco and sold it under an agreement by which the landlord's lien for advancements should be preserved, and the proceeds of the tobacco to be applied by the landlord in discharge of the lien. In the meantime, Ladd had mortgaged his interest in the crop to Marquess, and the contest was one for priority between Brandon, the landlord, and Marquess, the mortgagee. The case is, therefore, on all fours with the case at bar. It was there argued that the landlord's superior lien could not be perpetuated beyond the period of 120 days by the agreement made between the landlord and the tenant, although the effect of the agreement was to place the landlord in complete possession of the crop charged with the lien. In answer, however, to that contention, the court there said:

"When the agreement between the landlord and tenant was made in November, 1904, the landlord had a superior lien upon the tenant's interest in the tobacco to secure the payment of the money and property advanced to him, and the crop was on the leased premises. This lien he had the right under the statute to enforce at any time within one hundred and twenty days after the expiration of the tenancy. The purpose of the statute was to secure the landlord for advances made to his tenant by giving him a lien upon the crop. If, after the crop has been planted, and at any time during the period for which the lien of the landlord exists, the tenant for any reason concludes to deliver his interest in the crop to the landlord as security for advances made, we cannot perceive any reason why the lien may not in this way be preserved. An agreement of this kind does not extend the lien of the landlord beyond the statutory period, as the legal effect of it is the same as if the landlord had instituted legal proceedings to enforce the collection of his lien, and had acquired possession of the crop under process of the court. Creditors of the tenant cannot be prejudiced by

an agreement of this character, because the landlord holds the tenant's interest as a pledgee, and must account for whatever surplus remains after discharging his debt.

"When the tobacco was thus surrendered to the landlord and taken possession of by him, it would be folly to require that he should go through the useless and expensive form of instituting an action to enforce his lien upon tobacco that had been voluntarily placed in his possession for the purpose of securing his lien. And so it would be equally unnecessary to require that a landlord should have a tenant's property levied on and sold under a distress warrant or attachment for the amount of the debt when the tenant, to save the cost of a proceeding of this character, had delivered the property to the landlord to protect him."

Marquess v. Ladd, *supra*, was cited with approval in Jones v. Louisville Tobacco Warehouse Co., 135 Ky., 829.

Since the facts of this case bring it squarely within the doctrine announced in Marquess v. Ladd, *supra*, the judgment will have to be affirmed.

It is so ordered.