## Dark Tobacco Growers' Co-operative Association, et al. v. Haddox.

(Decided May 4, 1926.)

### Appeal from Ballard Circuit Court.

Chattel Mortgages—Landlord's Lien, Preserved by Signature, Within Statutory Time After Expiration of Tenancy, of Lien Statement Authorizing Co-operative Association to Pay Claim from Proceeds of Crop, Held Superior to Lien of Mortgage Theretofore Executed (Kentucky Statutes, Sections 2323, 2324; Kentucky Statutes Supp. 1924, Section 883f-41).—Where landlord and tenant were members of co-operative association, landlord's lien was as effectually preserved by his and tenant's signature, within 120 days after expiration of tenancy, of lien statement authorizing association to pay claim from proceeds of crop grown on his premises, as if he had obtained attachment or distress warrant under Kentucky Statutes, section 2324, in which case it would have been court's duty under Kentucky Statutes Supp. 1924, section 883f-41, to direct that crop be delivered to and sold by association, and hence his lien was superior, under Kentucky Statutes, section

2323, to that of mortgagee, who was charged with knowledge when he accepted mortgage, executed before signing of such statement, that both landlord and tenant were bound to deliver crop to association.

BRADSHAW & McDONALD and B. M. STEWART for appellants.

HENRY F. TURNER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Hardin Gholson rented to C. H. Purvis a tract of land to be cultivated in tobacco and corn during the year 1923. Both Gholson and Purvis were members of the Dark Tobacco Growers' Co-operative Association, and by the contract of tenancy the tobacco was to be cultivated, prepared for market and delivered to the association. During the tenancy Gholson furnished to Purvis money and supplies in the sum of $267.30, under a prior agreement that Gholson should have a lien on Purvis' share of the crops to secure the payment thereof. On March 17, 1924, Gholson and Purvis went to LaCenter, and signed the authorized lien statement issued and regularly used by the association for the purpose of enabling the landlord to secure the payment of a lien debt against his tenant's crop. In this statement Purvis requested the association to pay Gholson's claim out of the proceeds of the tobacco. Payments aggregating $134.24 were made to Gholson, leaving a balance due of $133.24.

In the meantime Purvis had executed to T. E. Haddox two mortgages covering the crop of tobacco; one on July 7, 1923, to secure a note of $100.00, and one of October 27, 1923, to secure a note of $150.00, and the mortgages were duly recorded.

This suit was brought by Haddox against Purvis, Gholson and the association to recover on the notes and enforce his mortgage lien. The association and Gholson defended on the ground that Gholson's landlord's lien was superior to the mortgage liens, and that the payment by the association to Gholson was proper. On final hearing Haddox was given a personal judgment against Purvis, adjudged a first lien on Purvis' share of the tobacco, and the association was directed to pay into court the entire amount of Purvis' debt, interest and costs. The association and Gholson have prayed an appeal.

Sections 2323 and 2324, Kentucky Statutes, are as follows:

> Section 2323. "A landlord shall have a superior lien, against which the tenant shall not be entitled to any exemption, upon the whole crop of the tenant raised upon the leased or rented premises to reimburse him for money or property furnished to the tenant to enable him to raise the crop, or to subsist whilst carrying out his contract of tenancy. But the lien of the landlord shall not continue for more than one hundred and twenty days after the expiration of the term, and, if the property upon which there is a lien be removed openly from the leased premises, and without fraudulent intent and not returned, the landlord shall have a superior lien upon the property so removed for fifteen days from the date of its removal, and may enforce his lien against the property wherever found."
>
> Section 2324. "The landlord may enforce the lien given in the next preceding section by distress or attachment, in the manner provided in this article for the collection of rent, and subject to the same liability."

The judgment was based on the fact that Gholson, the landlord, lost his lien by his failure to proceed within 120 days after the expiration of the term. A question is raised as to when the term expired, but in view of the conclusion of the court that question need not be discussed. In the case of Barlow v. Fuller, 157 Ky. 582, 163 S. W. 742, the facts are these: Fuller raised a crop of tobacco on the farm of Hutchcraft, who advanced him $206.00 for living expenses and for marketing the crop. Fuller mortgaged his one-half interest in the crop to S. T. Barlow. Hutchcraft did not take steps to enforce his lien within 120 days after the expiration of the term, but it was shown that Fuller surrendered the possession of the tobacco to Hutchcraft within the 120 days and before the lien had expired, with authority in Hutchcraft to sell Fuller's interest in the tobacco and apply the proceeds first to the discharge of Hutchcraft's lien, and then to the discharge of Barlow's lien, and pay the remainder, if any, to Fuller. In holding that the delivery by Fuller of his interest in the tobacco to his landlord Hutchcraft before the latter's lien expired preserved the lien as ef-

fectively as the institution of a legal proceding to enforce it, the court said:

"These facts bring the case squarely within the doctrine announced in Marquess v. Ladd, et al., 100 S. W. 305, 30 Ky. Law Rep. 1143. In that case, as in this, Brandon, the landlord, did not enforce his lien within the time prescribed by the statute; but, under a contract made with Ladd, the tenant, and while the tobacco was upon the leased premises, Brandon took possession of the crop of tobacco and sold it under an agreement by which the landlord's lien for advancements should be preserved, and the proceeds of the tobacco to be applied by the landlord in discharge of the lien. In the meantime, Ladd had mortgaged his interest in the crop to Marquess, and the contest was one for priority between Brandon, the landlord, and Marquess, the mortgagee. The case is therefore on all fours with the case at bar. It was there argued that the landlord's superior lien could not be perpetuated beyond the period of 120 days by the agreement made between the landlord and tenant, although the effect of the agreement was to place the landlord in complete possession of the crop charged with the lien. In answer, however, to that contention, the court there said: 'When the agreement between the landlord and the tenant was made in November, 1904, the landlord had a superior lien upon the tenant's interest in the tobacco to secure the payment of the money and property advanced to him, and the crop was on the leased premises. This lien he had the right, under the statute, to enforce at any time within 120 days after the expiration of the tenancy. The purpose of the statute was to secure the landlord for advances made to his tenant by giving him a lien upon the crop. If, after the crop has been planted, and at any time during the period for which the lien of the landlord exists, the tenant for any reason concludes to deliver his interest in the crop to the landlord as security for advances made, we cannot perceive any reason why the lien may not in this way be preserved. An agreement of this kind does not extend the lien of the landlord beyond the statutory period, as the legal effect of it is the same as if the landlord had instituted legal proceedings to enforce the collection of his lien, and had acquired posses-

sion of the crop under process of the court. Creditors of the tenant cannot be prejudiced by an agreement of this character, because the landlord holds the tenant's interest as a pledgee, and must account for whatever surplus remains after discharging his debt. . . . When the tobacco was thus surrendered to the landlord and was taken possession of by him, it would be folly to require that he should go through the useless and expensive form of instituting an action to enforce his lien upon tobacco that had been voluntarily placed in his possession for the purpose of securing his lien. And so it would be equally unnecessary to require that a landlord should have the tenant's property levied on and sold under a distress warrant or attachment for the amount of the debt, when the tenant, to save the cost of a proceeding of this character, had delivered the property to the landlord to protect him.' "

We see no reason why the same rule should not apply in this case. The landlord and tenant were both members of the Dark Tobacco Growers' Co-operative Association. The tobacco was on the landlord's premises. They were both under the legal duty to deliver the tobacco to the association. The association was the agent of both parties for the purpose of selling the tobacco and distributing the proceeds. The mortgagee when he accepted the mortgage from the tenant was charged with knowledge that the tobacco would have to be delivered to and sold by the association. Within 120 days after the expiration of the tenancy and while the landlord's lien was still in force both he and the tenant signed the authorized lien statement issued and regularly used by the association for the purpose of enabling a landlord to secure the payment of a lien debt against the tenant's crop. By this statement the association was authorized to pay the landlord's claim out of the proceeds of the crop. By this means the landlord's lien was as effectually preserved as if he had obtained an attachment or distress warrant, for even then it would have been the duty of the court to direct that the crop be delivered to and sold by the association. Section 883f-41, Baldwin's 1924 Supplement to the Kentucky Statutes. We are therefore of the opinion that appellants' lien was superior to that of appellee, and such should have been the judgment of the court.

Wherefore, the appeal is granted, the judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.