**Dearmont OLIVER, Appellant,**

v.

**R. L. FISHER and Helen Pikey Fisher, Defendants,**

**Van H. Sharp, Jr., Circuit Clerk, Garnishee-Respondent.**

No. 8652.

Springfield Court of Appeals.

Missouri.

June 7, 1968.

Motion for Rehearing or for Transfer to Supreme Court Denied June 25, 1968.

T. B. Russell, Joslyn & Joslyn, Charleston, for appellant.

George K. Reeves, Ward & Reeves, Caruthersville, for respondent.

HOGAN, Presiding Judge.

This case involves another aspect of the transaction we considered in Fisher v. Mikco Grain Co., Mo.App., 404 S.W.2d 752, though it is not a second appeal on the same issues. It was stipulated, however, that the trial court might consider and decide this case, which is a garnishment proceeding, on the transcript of the record in the earlier case. Since the record of proceedings in the other case was put in evidence here, we can and do take the other transcript into account in deciding the merits of this appeal. See Paridy v. Caterpillar Tractor Co., 7 Cir., 48 F.2d 166, 168–169 [2, 3].

On January 31, 1964, Mr. Fisher and his wife entered into a written agreement, styled a "Rent Contract" with Justa Investments, a corporation. This agreement provided, among other things, that Justa "has this day rented" 640 acres of land in New Madrid County, describing it, to Fisher and his wife; that all of the land was to be planted in wheat for the crop year 1964, and that upon delivery of the crop to a point designated by Justa (and compliance with certain other requirements) the rent

was to be "one-third of all wheat combined, delivered at no expense to Landlord." It was further provided that Justa was to have a lien on all crops produced by the tenant "for money advanced, damages, cash rent or otherwise."

Mr. Fisher put his crop in and contracted to sell it to Mikco Grain Company of Cairo, Illinois. Then on April 24, 1964, Mr. Fisher mortgaged the entire crop to Simmons Equipment Company, of Charleston, Missouri to secure what was described as "a past due open account, and parts account, and monies that Mr. Fisher owed [Simmons] for the past two years." It was stipulated that the Simmons mortgage was filed as required by Section 443.450, RSMo (1959), V.A.M.S., but that the "Rent Contract" was neither filed nor recorded.

In June 1964, the wheat was harvested and delivered to Mikco at its river port at Linda, Missouri. It was stipulated that the wheat was delivered between June 11 and June 16, 1964. Mikco withheld some of the money for advances and paid the remainder with drafts or checks. Though the record is not entirely clear, there were apparently three checks, all of which were delivered to a Mr. Richardson, Justa's president. One of the checks was made payable solely to Justa; it represented one-third of the wheat crop, and Justa kept it as rent. The other two checks, one for $9,223.43 and another for $157.71, were drawn and delivered on June 20 and June 23. The record inference is that these two checks were delivered to Justa at the river port on the dates of issue, but for reasons not apparent of record they were made payable to Fisher, Justa and Simmons.

On July 15, 1964, Justa and Fisher, as joint plaintiffs, filed suit in the Circuit Court of New Madrid County, setting up in their petition that Justa had advanced large sums to Fisher for planting, cultivation, production and harvesting of the wheat crop; that the last two drafts should have been made payable solely to

Justa, but that Mikco had insisted on making the drafts payable to Fisher, Justa and Simmons. The prayer of this petition was for judgment against Mikco in the amount of the last two drafts. Mikco filed an answer alleging that Justa claimed all of the proceeds from the sale of the wheat, but that Simmons also claimed part of the money by reason of its crop mortgage. Mikco prayed that the claimants to the funds represented by its drafts issued on June 20 and 23 be required to interplead, and that it be allowed to pay the sums of $9,223.43 and $157.71 into the registry of the court and be discharged. On October 13, 1964, the trial court ordered that the money be paid into the registry of the court and that the various claimants interplead. Simmons set up its claim by a cross-claim in the nature of an interplea, and on July 13, 1965, after trial to the court, Simmons had judgment against Fisher and Justa for $3,169.92, which included interest and attorney's fee. This judgment was appealed, solely on the ground that Simmons' mortgage did not create a lien on the wheat because the crop was not sufficiently described. As against this claim of error, we affirmed the judgment. Fisher v. Mikco Grain Co., supra, 404 S.W.2d 752.

On April 27, 1965, Mr. Oliver, the garnisher and appellant in this proceeding, obtained a judgment against Mr. Fisher and his wife in the amount of $1,992.80, and on some unspecified date, presumably a short time after the judgment was entered, sued out a general execution. In aid of this execution, Mr. Oliver summoned Mr. Sharp, in his capacity as clerk of the Circuit Court of New Madrid County, as garnishee. In response to interrogatories, Mr. Sharp answered that at the time he was summoned as garnishee, he had in his possession and deposited in the registry of the circuit court the sum of $9,381.14, which had been paid in by Mikco in the interpleader action. This answer was denied, the denial traversed by reply, and the issues thus tendered were tried to the court

on November 7, 1966. The trial court found the issues generally for the garnishee, and further found that the funds in Mr. Sharp's possession, after payment of the Simmons judgment belonged solely to Justa. The garnisher has appealed. He makes two points in this court: (1) that the provision in the "Rent Contract" creating Justa's lien for advances had no more standing than an unfiled chattel mortgage, and Oliver was entitled to priority as a judgment creditor; and (2) that ownership of the wheat crop and the proceeds of the sale was vested in R. L. Fisher and therefore the fund in the hands of the circuit clerk was subject to garnishment. The respondent counters by saying that the fund in the hands of the circuit clerk was immune to garnishment because it was property in custody of the law.

We have considered the various points made and the authorities cited by the parties, but for the purposes of this opinion we need not discuss them all in detail. What the garnisher lays claim to is the balance remaining on deposit with the clerk after Simmons' judgment was satisfied, and the issue is whether the record supports a finding that Justa had the paramount claim to that money. We must in candor say that, even considering both transcripts, the record is vague, ambiguous and even obscure in several respects; however, it is our duty to dispose finally of a case before us on appeal, if possible, Rule 83.13(c), V.A.M.R.; State ex rel. George v. Mitchell, Mo.App., 230 S.W.2d 116, 120 [5], and we consider the factual detail before us, and the reasonable inferences therefrom sufficient for that purpose. We would also reiterate that in this court-tried case, the reasons the trial court may have had in mind when he decided the case are not determinative, if the judgment is correct on any theory, City of St. Louis v. Evans, Mo., 337 S.W.2d 948, 954 [2]; Brown v. Montgomery, 354 Mo. 1041, 1050–1051, 193 S.W.2d 23, 27 [3], and though we review the case de novo, we

must affirm the judgment unless it is clearly erroneous. Rule 73.01(d), V.A.M. R.

■ Preliminarily, we should note two matters and set them to one side. First, we accord considerable respect to respondent Sharp's contention that the fund on deposit was in custody of the law and could not be subjected to garnishment. As a general rule, funds deposited in court to await the outcome of litigation are immune from garnishment by creditors, but that may not always be true if it has been judicially determined to whom the funds belong. Anno., 1 A.L.R.3d 936, 938–942, §§ 2, 3 (1965). The sequence of events in the record is not specific enough for us to rule confidently upon this contention. We also note that the parties have consistently assumed that the relationship between Justa and Fisher was that of landlord and tenant. In our opinion, the "Rent Contract" could very well be construed as an elaborate cropping agreement, in view of the extensive control Justa retained over the conduct of the farming operation. We will assume, as do the parties, that Justa and Fisher were landlord and tenant, and avoid consideration of any question whether the funds on deposit were "joint funds," immune to garnishment on that ground. See Hamra Bros. v. Herrell, Mo.App., 200 S.W. 776, 779–780 [5, 6] [7, 8]. Fundamentally, the garnisher's claim to priority rests on the assumption that Justa had waived its statutory lien for advances, created by Section 441.290 RSMo (1959), V.A.M.S., and it could therefore rely only on the lien created by the "Rent Contract." We cannot agree.

■ Considering the whole of both records, and the reasonable inferences therefrom, it appears that Fisher entered upon the rented tract solely for the purpose of making a wheat crop. The "Rent Contract" provided that Justa retain control of the "farming and operation" of the land. Justa also reserved the right to enter upon the premises and cultivate, harvest and market the wheat if Fisher failed to do so, or failed to "do or have done the necessary labor in connection therewith." Certain methods of cultivation and soil conservation were prescribed. The "Rent Contract" also provided that Fisher would deliver the entire crop to a selling point designated by Justa. Both Fisher and Justa, therefore, contemplated removal of the crop by Fisher and delivery to the place of sale. It is freely admitted that Justa advanced more than $13,000 to make the crop —"every nickel of it," as Fisher put the matter. In June, when the wheat was ready for harvest, Fisher notified Mr. Richardson. Mr. Richardson "located" some combines—ten of them, according to Mr. Fisher—and the wheat was harvested. The wheat was then removed from the premises and taken to Mikco's river port between June 11 and June 16, 1964. From here, the course of events can only be made out piecemeal, but it appears that Mikco made out three checks, two of them to multiple payees. When Mr. Richardson was interrogated about these checks in the earlier case, he spoke somewhat equivocally of "the check" and "the checks," but the substance of his testimony was that he "picked up" the draft or drafts at Linda "a day or two" after delivery had been completed. Fisher said he "never saw the check" and later consistently asserted that he claimed no interest whatever in the proceeds of the crop. There is some indication in the record that two checks were returned by Justa because they had been made out to multiple payees, rather than to Justa alone. On July 15, 1964, Justa filed suit, seeking to have the proceeds of the crop paid directly to it.

Sections 441.290 and 441.300, RSMo (1959), V.A.M.S., provide:

"Every landlord shall have a superior lien, against which the tenant shall not be entitled to any exemption, upon the whole crop of the tenant raised upon the leased or rented premises, to reimburse the landlord for money or supplies furnished to the tenant to enable him to

raise and harvest the crops or to subsist while carrying out his contract of tenancy, but the lien of the landlord shall not continue for more than one hundred and twenty days after the expiration of the tenancy, and, if the property upon which there is a lien be removed from the leased premises and not returned, the landlord ·shall have a superior lien upon the property so removed for fifteen days from the date of this removal, and may enforce his lien against the property wherever found."

"The landlord may enforce the lien given in sections 441.280 and 441.290 by distress or attachment, in the manner provided in this chapter for the collection of rent, and subject to the same liability, and the action for money or supplies and for rent may be joined in the same action."

The appellant assumes that the lien created by Section 441.290 has been waived because Justa commenced no legal action within 15 days after the crop was removed from the premises. We think the assumption is unjustified, for in our opinion Section 441.300 does not prescribe an exclusive method of enforcement of the lien created by Section 441.290. Doubtless if the lien was to be enforced by distress or attachment, it was incumbent upon the landlord to proceed as Section 441.300 provides, that is, against the property, and not by an action in personam against a purchaser from the tenant; we so held in Kennard v. McCrory, 234 Mo.App. 626, 634–635, 136 S.W.2d 710, 716 [6–8], but the question involved here was not considered in that case. Many years ago both the other Courts of Appeals considered the argument that liens such as the one in question must be enforced by legal process. In Auxvasse Milling Co. v. Cornet, 85 Mo.App. 251, 255, the St. Louis Court of Appeals, speaking of a landlord's lien upon a crop for unpaid rent, stated: " * * * Ordinarily the enforcement of such a lien is by legal process, but this only becomes necessary when the tenant compels it. If the tenant sur-

renders the crops to the landlord and authorizes him to sell them to satisfy the rent, or if he himself sells them with the consent of the landlord for that purpose, all is accomplished by the agreement of the parties that the law could accomplish. * * * Therefore the objection that the sales were not in invitum, i.e., under legal process, is without force. * * * " There is a similar ruling in Dunlap v. Dunseth, 81 Mo.App. 17, 22 [2]. See also, Colean Manufacturing Co. v. Jones, 122 Ill.App. 172, 173–174. We conclude that the law does not therefore, in all instances, require that a landlord resort to distress or attachment to satisfy the lien for advances created by Section 441.290.

The appellant further assumes that Justa waived its lien for advances because it took no affirmative step to assert and attempt to satisfy that lien within the period limited by Section 441.290. In the circumstances of this particular case, we think this assumption is also unjustified. Generally, under statutes similar to Section 441.290, it is sufficient for the landlord to take possession of the crop in discharge of his superior lien, provided he does so within the time limited and with his tenant's consent, without resorting to a warrant of distress or a writ of attachment. Colean Manufacturing Co. v. Jones, supra, 122 Ill. App. at 173–174; Dark Tobacco Growers' Co-op. Ass'n v. Haddox, 214 Ky. 300, 283 S.W. 81; Barlow v. Fuller, 157 Ky. 582, 163 S.W. 742, 744 [3]; 52 C.J.S. Landlord and Tenant § 657, pp. 506–507. We see no reason why a like rule should not apply in this case. There is no question here of the tenant's unauthorized removal of the crop to which the lien extended; it was Fisher's duty to deliver the harvest to a point satisfactory to Justa at his own expense, so provided in the "Rent Contract." There was no reason, therefore, for Justa to take the crop in possession and transport it to Linda. While the testimony is not explicit on this point, the inference is that within a few days—June 20 or 23—after removal of the wheat, Richardson did specifically take

possession of the proceeds of the crop, claiming the whole thereof by Justa's lien for rent and statutory lien for advances. It is true Justa was not successful in asserting its lien in this manner as against Simmons' recorded lien, but that is not determinative here. For the purposes of this case, we see no distinction between taking possession of the crop in satisfaction of the lien for advances, and taking possession of the proceeds at the point of delivery. The proceeds were taken in possession, with Fisher's prior and subsequent consent, in attempted satisfaction of Justa's lien for advances, and nothing more could have been accomplished by distress or attachment of the wheat itself. Regardless of the efficacy of its action as against Simmons' claim, we think Justa's attempted enforcement of its statutory lien was sufficient against a subsequent judgment creditor. There was, therefore, a reasonable basis for a finding that the funds in the garnishee's hands were Justa's by virtue of its superior lien. We cannot say the judgment entered in this case was clearly erroneous, and it is therefore affirmed.

STONE and TITUS, JJ., concur.