EQUITY MUTUAL INSURANCE COMPA-
NY, a corporation, Plaintiff-Respondent,

v.

William Ray RILEY, Defendant-Appellant,
and
Ronald A. Cummins, Intervenor-Appellant.

Nos. 34044, 34050.

St. Louis Court of Appeals,
Missouri.

Nov. 23, 1971.

Motion for Rehearing and to Transfer to
Supreme Court Denied Jan. 3, 1972.

Application to Transfer Denied Feb. 22, 1972.

Armstrong, Teasdale, Kramer & Vaughan by John J. Cole and Frank N. Gundlach, St. Louis, for plaintiff-respondent.

Benson Cytron, House Springs, for intervenor-appellant.

CLEMENS, Commissioner.

The issue in this declaratory judgment action is whether the plaintiff-liability insurer (Equity Mutual) can disclaim its coverage on the ground that a non-owned automobile driven by the defendant-insured was furnished for the *regular use* of the defendant-insured.

Plaintiff had issued its public liability policy to defendant Riley covering a 1966 Pontiac. When that car was repossessed by a mortgagee Riley got possession of, but did not validly purchase, a 1954 Ford. Three days later Riley drove the Ford into collision with Ronald A. Cummins who later sued Riley for damages.

Equity Mutual filed this action for a declaratory judgment that it was not liable under its policy on the ground its coverage did not extend to the non-owned 1954 Ford driven by Riley since it was "furnished for his regular use." The injured Cummins intervened and counterclaimed for a declaratory judgment that Equity Mutual was liable under its policy. The trial court found for Equity Mutual and Riley and

Cummins appeal. The two appeals have been consolidated.

The insuring clause of Equity Mutual's policy covered bodily injury and property damage "caused by accident and arising out of the ownership or use of the *owned* automobile *or* the use by the named insured of a *non-owned* automobile . . ." (Our emphasis).

Standing alone, that language covered Riley's Ford as a non-owned automobile. Equity Mutual seeks to avoid this by relying on the policy definition of a non-owned automobile as one "not owned by or furnished for the regular use of the named insured . . ."

We look to the evidence concerning Riley's acquisition and use of the Ford. As said, the 1966 Pontiac described in the policy was repossessed by the mortgagee. To have transportation to work, Riley "bought" the 1954 Ford from his friend Michael Mudd for $125. Mudd had "bought" it from the registered owner, Thomas Abbott. Although Abbott had signed the title certificate his signature had not been notarized nor had the name of an assignee been inserted. All parties now agree defendant Riley did not "own" the Ford.

When Riley got the Ford it had no workable transmission. He promptly repaired it and had the collision with Cummins on the first day he drove it. When Riley got the Ford he considered it was not good enough for any use except getting to and from work; he did nothing about getting a title or license plate; he intended to use it "well, not regular, just temporary." Riley had not yet made definite plans to get another car but intended to do so in the near future.

As do most automobile insurance policies this one afforded both primary and secondary coverage. Primary coverage was for the 1966 Pontiac described in the policy. Secondary coverage was for other automobiles the insured might be driving, either owned or non-owned. For example, the policy covered any other automobile *bought* by the insured to replace the automobile described in the policy. And, as pertinent here the policy also covered a non-owned automobile unless, as the definition declared, it was "furnished for the regular use" of the insured.

Equity Mutual entreats us to consider Riley's acquisition and use of the Ford as being furnished for his "regular use." This, since he intended to use it for such normal purposes as going to and from work. Contra, Riley contends the Ford was not furnished for "regular use" since it was bought only for temporary use, until he could get a better car. Neither contention is illogical because "regular" is a word of flexible meaning. Webster carries scores of definitions and illustrations. "Regular" denotes a degree of uniformity in manner and also a degree of constancy in time.[1]

In reaching our conclusion we consider the guides laid down in two cases. In Brugioni v. Maryland Casualty Co., Mo., 382 S.W.2d 707 [2-4], the court said "it is true * * * that it is the court's duty to interpret insurance contracts and enforce them as they are written and not to remake them. (citations). On the other hand, an insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provi-

---

1. Referring to manner, we speak of regular habits, regular verbs and regular features. Referring to time, we speak of regular soldiers, a regular first baseman, and even regular elimination.

**418**

sions limiting the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer." The other guide applies to cases like ours where the policy declares it shall comply with the provisions of the Motor Vehicle Safety Responsibility Law [Ch. 303, RSMo., 1969, V.A.M.S.]. In Winterton v. Van Zandt, Mo., 351 S.W.2d 696 [1, 2], the court held that in view of that act liability policies will be liberally construed to grant coverage since "the provisions of that act are indicative of the public policy of this state to assure financial remuneration to the extent and under the conditions therein provided for damages sustained through the negligent operation of motor vehicles upon the public highways of this state * * *."

Giving defendant Riley the benefit of liberal interpretation to which he is entitled we hold that under the facts of this case the coverage given by the insuring clause of Equity Mutual's policy to "use by the insured of a non-owned automobile" was not negated by the imprecise definition limiting that coverage to automobiles "not furnished for regular use."

The judgment is reversed and the cause is remanded for entry of a declaratory judgment as prayed by intervening defendant Cummins.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment reversed and cause remanded with instructions.

BRADY, P. J., DOWD, J., and LACKLAND H. BLOOM, Special Judge, concur.

WOLFE, J., not participating.