**FARMERS INSURANCE COMPANY, INC., Respondent,**

v.

**Stanley L. MORRIS et al., Appellants.**

**No. KCD27482.**

Missouri Court of Appeals, Kansas City District.

Aug. 30, 1976.

Roy W. Brown, Kansas City, for appellants.

Richard H. Heilbron, Kansas City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Farmers Insurance Company, Inc., brought this suit to obtain a judgment declaring it not to be liable under an automobile policy issued by it to John B. Cresson, respecting injuries caused when an automobile operated by Mrs. Cresson, the insured's wife who is now deceased, came into collision with Karen Traynor. The automobile driven by Mrs. Cresson at the time of the accident was owned by her son and daughter-in-law, Mr. and Mrs. John D. Riggs, and was insured by American Family Insurance Company. The defendants named in this declaratory judgment suit were Stanley L. Morris, administrator of the estate of Mrs. Cresson, Traynor and American. The trial court entered judgment for plaintiff. Traynor appeals.

The issue in this case is whether coverage under the Farmers' policy extended to the Riggs' automobile involved in the Traynor accident. The only vehicle described in the Farmers' policy was a 1962 Ford Fairlane owned by John B. Cresson. However the policy also covers liability for personal injury caused by either Mr. or Mrs. Cresson while using a "non-owned automobile." The question for decision here is whether the Riggs' 1966 sedan was a non-owned automobile within the definition of the Farmers' policy which reads:

"Non-Owned Automobile means an automobile not owned by or regularly or frequently used by the named insured or any resident of the same household, other than a substitute automobile."

Under the facts in evidence, the Riggs, sedan was not a "substitute automobile" within the policy definition because the Cresson Fairlane at the time in question was not "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." The question for determination therefore narrows to the inquiry as to whether the Riggs' sedan was "regularly or frequently used" by Mrs. Cresson.

The facts with respect to the availability and the use by Mrs. Cresson of the Riggs' sedan are not in dispute. Riggs was a son of Mrs. Cresson by a previous marriage. The Riggs and the Cressons lived in adjoining homes and had done so for 20 or 25 years.

Riggs owned three vehicles consisting of a 1968 station wagon, a pickup truck and the 1966 sedan. Riggs generally used the station wagon to go to and from work, and the Ford sedan was left at home "the biggest share of the time." That sedan had been purchased in 1966 and although not purchased for Mrs. Cresson's particular use, it had been available for her use during all of the 4 or 5 years of the Riggs' ownership. Mr. Cresson owned a 1962 Ford Fairlane car (the one insured by Farmers), but Mrs. Cresson drove it only once or twice and preferred instead to drive the Riggs' sedan because it was equipped with power steering. The Riggs permitted her to drive the sedan "whenever she wanted to use it." The only restriction on her use was that it could be only when Mrs. Riggs didn't need it. There was no limitation on where she could drive or go in it. During the 4 or 5 years prior to the accident in question, Mrs. Cresson had so used the Riggs' automobile

for shopping, for going to the hairdresser, for the purpose of going on two vacations and for driving to work. In the latter respect, Mrs. Cresson and her son both worked for the same employer and on some occasions Mrs. Cresson rode with her son in the Riggs' station wagon; on other occasions she took the bus to work; but on still other occasions, particularly when Mr. Riggs was on the midnight shift, she drove the Riggs' 1966 sedan.

The Riggs parked their sedan in the Cresson back yard. Sometimes the Riggs would leave a set of keys with Mrs. Cresson when she indicated she wanted to use the car. Otherwise, basically, Mrs. Cresson would have to ask either Mr. or Mrs. Riggs for permission whenever she desired to drive the 1966 sedan, and the keys would then be turned over. When asked whether Mrs. Cresson had ever been refused permission to use the car when she asked for it, Riggs answered "not my mother."

The principles enunciated in *State Farm Mutual Automobile Ins. Co. v. Western Casualty and Surety Co.*, 477 S.W.2d 421 (Mo. banc 1972) govern the analysis of these facts. The *State Farm* case required an interpretation of a similar "non-owned automobile" clause and the court stated the general purpose and objective of such a clause as follows:

"State Farm's policy was intended basically to provide coverage on one designated vehicle (the 1964 station wagon) in return for the payment of a premium based on single car coverage. However, the policy does contain clauses which provide limited additional coverage for that single premium * * *.

* * * * * *

"Another instance of additional coverage is provided by the policy provision with respect to operation of 'non-owned' automobiles. * * * The effect and purpose of such a clause is well stated in a statement with reference to 'drive other cars' provisions in an Annotation in 86 A.L.R.2d 937, 940, as follows: 'The purpose of the "drive other cars" provision in an automobile liability policy is to cover occasional or incidental use of other cars without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium.' "

Looking at what is meant by the term "frequent or regular use" in light of that general objective, the court considered cases from other jurisdictions and pointed out that some other courts hold that is to be determined solely, or at least primarily, on the basis of the purpose for which the non-owned automobile was furnished, while other courts have decided the question on the basis of length or type of use. The *State Farm* opinion then holds:

" * * * we conclude that we should not limit ourselves either to a test of merely determining motive or purpose or one of simply measuring length and extent of availability of use. Rather, each case should be decided on its own facts, and the court should take into consideration the type and length of use, the purpose for which the non-owned automobile was furnished, and any other pertinent facts, including a determination of whether the use and purpose was in harmony with or violative of the objective of the 'non-owned automobile' clause."

Applying here the criteria required to be considered by the *State Farm* opinion, the first factor is the matter of the type and length of use of the Riggs' sedan by Mrs. Cresson. The record shows that she drove this car for virtually every kind of use, including going to and from work, personal shopping and pleasure, and two out of town vacation trips, one of which was the trip which gave rise to the accident with Traynor. These uses were spread over a long period of 4 to 5 years, and occurred "whenever she wanted to use it." This history strongly tends to show regular use.

Turning to the second test mentioned by *State Farm*, the Riggs' automobile was not furnished to Mrs. Cresson for one single limited purpose, but rather was for the wide scope of varied uses to which she put it from time to time as already mentioned,

including a prior vacation trip similar to the one during which the accident in question occurred. In this respect, this case differs sharply from *Equity Mutual Insurance Co. v. Riley*, 475 S.W.2d 416 (Mo.App.1971) where the insured used a "non-owned automobile" to drive to and from work only until he could obtain a better one; from *Michigan Mutual Liability Co. v. Stallings*, 523 S.W.2d 539 (Mo.App.1975) where the insured was driving a "non-owned Army vehicle on return from military encampment; and from *Palmer v. Glens Falls Insurance Co.*, 58 Wash.2d 88, 360 P.2d 742 (1961) where the insured was driving a "non-owned automobile" to a specified repair shop for major repairs. Under the "purpose" test, the facts support a finding of regular use by Mrs. Cresson.

Next for consideration is whether the extension of coverage under Farmers' policy to the Riggs sedan would be in harmony with the objective of the non-owned automobile clause. The important fact that Mr. Cresson had available his own 1962 Fairlane during all the time Mrs. Cresson used the Riggs' sedan governs with respect to this factor. As stated in *State Farm*, the basic idea of this policy provision is to insure "one automobile for one premium" and "to exclude the habitual use of other cars." It matters not that the Cresson 1962 Fairlane was parked idly in the Cresson garage at home while the Cressons were on their one week vacation trip in the Riggs' sedan. The more important fact is that Mrs. Cresson had used the Riggs' sedan for a period of 4 or 5 years, during which time Mr. Cresson had concurrently been operating his separate owned automobile which was the only one described as such in the Farmers' policy. Furthermore, it must be observed that even though the Cresson Fairlane was garaged for the one week vacation period, nevertheless, it was covered during that time under the comprehensive portion of the insurance policy against the significant possibility of loss from such risks as fire, theft, and vandalism. If the Farmers' policy were to be construed as giving coverage to the Riggs' sedan, then the objective of the policy provision would be subverted in that the Cressons would get coverage on two cars, both of which were habitually used, while paying premium for only one. This factor distinguishes this case from and requires an opposite result from that reached in *State Farm Mutual Automobile Ins. Co. v. Western Casualty and Surety Co., supra*, and *Equity Mutual Insurance Co. v. Riley, supra*. Much more akin to the present case is *Nationwide Mutual Ins. Co. v. Bullock*, 21 N.C.App. 208, 203 S.E.2d 650 (1974) where it was held that a wife's use of a relative's non-owned vehicle was not infrequent or casual but was of a more permanent and recurring nature so as to be excluded from coverage.

The *State Farm* opinion requires consideration also of "any other pertinent facts." Such facts which appear in the record here and which are entitled to consideration are that the Riggs' automobile was parked on Cresson premises; that the Riggs retained possession of the keys to the car; and that Mrs. Cresson generally had to ask permission before each use of the car by her. The parking of the Riggs' sedan on the Cresson premises is a factor which buttresses to some minor extent the other factors already discussed tending to indicate regular and frequent usage by Mrs. Cresson. *Nationwide Mutual Ins. Co. v. Bullock, supra; American Casualty Co. v. Lattanzio*, 78 N.J. Super. 404, 188 A.2d 637 (1963).

However, the retention of the car keys by the owner has been regarded by some cases as an indication that the party given permission to use the car was not making "regular and frequent use." *American Casualty Co. v. Lattanzio, supra; Kentucky Farm Bureau Mutual Ins. Co. v. Hill*, 278 S.W.2d 729 (Ky.App.1955). On the other hand, regular and frequent use was found to exist even though the owner did retain possession of the keys. *Boedigheimer v. Taylor*, 287 Minn. 323, 178 N.W.2d 610 (1970). And see *Giokaris v. Kincaid*, 331 S.W.2d 633 (Mo.1960) where it was held that a permitee was not making regular and frequent use of a non-owned automobile even though she did have a set of keys to the non-owned car.

With respect to Mrs. Cresson being required generally to ask permission for each use, such a factor has been considered by a number of cases to indicate a lack of regular and frequent use. *Juzefski v. Western Casualty and Surety Co.*, 173 Cal.App.2d 118, 342 P.2d 928 (1959); *DiOrio v. New Jersey Manufacturers Ins. Co., Inc.*, 63 N.J. 597, 311 A.2d 378 (1973); *National Emblem Ins. Co. v. McClendon*, 481 S.W.2d 186 (Tex. Civ.App.1972); *American Casualty Co. v. Lattanzio, supra; Kentucky Farm Bureau Mutual Ins. Co. v. Hill, supra.* On the other hand, other cases have found regular and frequent usage despite the existence of this factor. *Nationwide Mutual Ins. Co. v. Bullock, supra; Boedigheimer v. Taylor, supra.*

The most reasonable conclusion based on weighing all of the factors mentioned is that Mrs. Cresson did regularly and frequently use the Riggs' sedan. That automobile therefore did not constitute a "non-owned automobile" under the Farmers' policy. At the very least, the conclusion by the trial court to that effect should be sustained under Rule 73.01 as explicated by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Affirmed.

All concur.