KENILWORTH INSURANCE
COMPANY, Appellant,

v.

Rex A. COLE et al., Respondents.

No. KCD 29858.

Missouri Court of Appeals,
Western District.

Sept. 4, 1979.

As Modified Sept. 12, 1979.

J. Michael Cronan, Jackson & Sherman, P. C., Kansas City, for appellant.

Joe F. Willerth, Piedimonte & Cochran, Independence, Kevin E. Glynn, Miller, Simmons & Moore, Kansas City, for respondents.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SWOFFORD, Chief Judge.

The appellant (company) filed an action seeking a declaratory judgment that it did not have insurance coverage on respondent, Rex A. Cole, under an automobile liability insurance policy wherein he was the named insured, for claims arising out of an automobile accident which occurred June 15, 1975. At the time of the accident Cole was driving a Ford Mustang automobile owned by defendant Dwight V. Blackwell, a minor, and titled in the name of defendant Zula Blackwell, his mother. On that date, the Mustang came into collision with a Pontiac automobile owned by defendant Melvin Roscoe Smith and then being driven by his daughter, defendant Theresa Lucinda Smith. The other named defendants, seven in number, were occupants of the Smith or Blackwell cars at the time of the collision.

The policy of insurance involved was issued by the appellant to Rex Cole and insured him in the operation of a 1965 Ford Station Wagon, not involved in the June 15, 1975 accident.

The court below denied relief.

The company seeks judgment under the policy terms contained in Section V of the insuring clauses, which provide in pertinent part:

"V Use of other automobiles.

 * * * if during the policy period such named insured * * * owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy * * * with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

 * * * * * *

(d) This insuring agreement does not apply:

(1) to any automobile * * * *furnished for regular use* to * * * the named insured * * * " (Emphasis supplied)

By written stipulation of the parties, filed in the court below, it was agreed:

"The *sole issue* in this case is whether or not the *1966 Mustang automobile was 'furnished for regular use'* to Rex A. Cole as provided in the policy * * * *" (Emphasis supplied)

Of course, the single issue could only be determined in the court below and reviewed here in the light of the facts and circumstances disclosed by the evidence as to whether or not Blackwell did in fact furnish the Mustang automobile to Cole for "his regular use" within the meaning of the exclusionary policy provision above quoted, under applicable authorities.

The company raises as its first point of error the charge that the trial court misapplied the law of Missouri (1) in holding that the policy language "furnished for regular use" was *ambiguous;* and (2) in failing to follow the law of Missouri as expressed in the cases of *State Farm Mutual Automobile Insurance Company v. Western Casualty and Surety Company,* 477 S.W.2d 421 (Mo. banc 1972), and *Farmers Insurance Company, Inc. v. Morris,* 541 S.W.2d 66 (Mo.App. 1976) in declaring that the policy language in those cases was more favorable to exclude coverage than the language of the policy here involved.

At the close of all the evidence, after inquiry by the Court, counsel were granted time in which to offer suggested findings of fact and conclusions of law. If such were ever proffered to the court, they do not appear in the record. The trial court did make four findings of fact, which were, in summary: (1) the 1966 Mustang automobile driven by Cole on June 15, 1974 (sic) was owned by defendant Dwight Blackwell; (2) the Ford Station Wagon owned by Cole was ordinarily driven by Cole when he drove on business or pleasure; (3) Cole used Blackwell's Mustang on various occasions, but primarily as an aid in starting his own Ford with the use of a jumper cable when the Ford would not start; and (4) the Mustang was not "furnished for regular use" of defendant Rex A. Cole as contemplated by paragraph V(d) of Cole's automobile policy.

The trial court also declared four conclusions of law, as here summarized: (1) the automobile policy issued to Cole was in full force and effect at the time of the collision; (2) at that time Cole was covered by the provisions of such policy in the operation of the Blackwell Ford Mustang automobile; (3) the plaintiff insurance company was obligated to defend Cole on any claims or suits arising from the collision and to assume liability for his acts at the time of the aforesaid collision; and (4) plaintiff insurance company is not entitled to the declaratory judgment relief prayed for in its petition.

▇ The trial court thereupon entered judgment in accordance with such findings and conclusions. The source of the appellant's complaint in its first point on this appeal is a Memorandum Opinion of the trial court filed with said findings, conclusions and judgment. The exact points of criticism of such opinion are the statement of the trial court:

" * * * there is *'room for construction'* of the exception to the policy and it should be construed most strongly against the insurer."

and the statement:

"The language of the policy in this case is less favorable to exclusion of coverage than in *State Farm v. Western Casualty,* Mo. en banc, 477 S.W.2d 421 or *Farmers Insurance v. Morris,* Mo.App., 541 S.W.2d 66. In *State Farm* the exclusion applies to non-owned automobiles 'furnished or available for the frequent or regular use' of the insured; and in *Farmers Insurance,* the language is 'regularly or frequently used' by the insured."

In the first instance, the appellant urges that the trial court "Misapplied the Law of Missouri" in holding the policy language was "*Ambiguous* and Therefore Must Be Construed Against Plaintiff".

A reading of the trial court's opinion clearly reveals that it did not hold that the policy provision was "ambiguous" but that it gave "room for construction" under the facts and circumstances of this particular case. This conclusion is bolstered by the fact that the trial court cited and relied

upon the case of *Brugioni v. Maryland Casualty Company,* 382 S.W.2d 707 (Mo.1964) and embraced the long-standing principle there stated, at l.c. 710[2–4]:

"It is true as the defendants contend that it is the court's duty to interpret insurance contracts and enforce them as they are written and not to remake them. (cases cited). On the other hand, *an insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down on the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer.* (cases cited)." (Emphasis added)

See also: *Giokaris v. Kincaid,* 331 S.W.2d 633, 639, 641[3, 4] (Mo.1960).

The trial court obviously used the term "room for construction" as synonymous with "room for interpretation" in the light of the facts before it in this case. That such was the case is apparent from the fact that the trial court, after its comments on the exclusion clauses in *State Farm v. Western Casualty,* supra, and *Farmers Insurance v. Morris,* supra, as compared with such clause in this case (which appellant by some obscure reasoning constituted a "misapplication" of and "failure to follow" the law of Missouri) stated:

"Guidelines of the *State Farm* case (l.c. 424) include the type and length of use and the purpose for which the non-owned automobile is furnished. *Under the facts of the present case,* the use of the non-owned vehicle was for very brief periods, not for any trips of length, and primarily for use in starting the insured's car." (Emphasis added)

■ This Court cannot agree that the court below, as reflected in its memorandum opinion, either misapplied or failed to follow the law of Missouri. However, even assuming that such opinion contained erroneous legal or factual reasons for the result

reached, this Court's review is not restricted or limited thereby, and the appellate obligation resting here in this case is clear and well-defined.

■ It is the duty of this Court to finally dispose of a case before it on appeal, if that is possible. Rule 84.14. When this Court considers the evidence before it, under the searchlight of controlling law, and the reasonable conclusions and inferences to be drawn therefrom, and, in so doing, concludes that in a bench-tried case the proper result was reached, the judgment or decree should be affirmed. And this is true even though the trial court may have assigned incorrect or erroneous legal or factual reasons for its judgment. What the trial court may have had in mind when the case was decided is "not determinative, if the judgment is correct on any theory". *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318[12] (Mo. banc 1964); *City of St. Louis v. Evans,* 337 S.W.2d 948, 954[2] (Mo.1960); *Brown v. Montgomery,* 354 Mo. 1041, 193 S.W.2d 23, 27[3] (1946); *Oliver v. Fisher,* 430 S.W.2d 611, 613[2] (Mo.App.1968). This long-standing principle controlling court-tried cases on appeal has properly not been diminished or altered under the present standards of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), nor revised Rule 73.01. *Farm Bureau Mutual Ins. Co. v. Broadie,* 558 S.W.2d 751, 753[1] (Mo.App.1977); *Ryan v. Equitable Life Assur. Society,* 560 S.W.2d 884, 886[1] (Mo.App.1977). The chief concern of this Court on such an appeal is the correctness of the result below and not the route by which it is reached. *Helmkamp v. American Family Mutual Ins. Co.,* 407 S.W.2d 559, 566[8] (Mo.App.1966).

As was said in the case of *Brown v. Montgomery,* 354 Mo. 1041, 193 S.W.2d 23, 27[3] (1946):

"On appeal, we are not concerned with the erroneous reasons assigned, if the particular decree entered by the court is not erroneous. (cases cited). *We must consider what the court ruled by the decree and not what it said in the opinion.* * * * *" (Emphasis added)

The decree (judgment) in this case from which this appeal is lodged stated (following the findings of fact and conclusions of law above set forth):

"IT IS, THEREFORE, ORDERED AND ADJUDGED that plaintiff is not entitled to the relief prayed for in its first amended petition, but that plaintiff is obligated as aforementioned under aforementioned insurance policy issued by plaintiff, and costs are assessed against plaintiff, and let execution issue."

The second point raised by the appellant on this appeal is that the finding by the trial court, that the Blackwell 1966 Mustang automobile driven by Cole at the time of the accident on June 15, 1975 was not furnished for the regular use of Cole, was against the weight of the evidence.

■ This point directly challenges the sufficiency of the evidence on the sole factual issue upon which the case hinges, as stipulated by the parties, namely, was the Blackwell automobile furnished for the regular use of Cole? In approaching appellate review of this point, this Court does so within the standard of review contained in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.), that a decree or judgment should be set aside on this ground "with caution and with a firm belief that the decree or judgment is wrong".

■ Before summarizing the evidence in this record, some preliminary observations and considerations are in order. Where the insurer seeks to escape coverage solely because of policy exclusion, the burden is upon it to prove facts which would make those provisions applicable. *Kelso v. Kelso*, 306 S.W.2d 534, 536[2] (Mo.1957); *Giokaris v. Kincaid*, 331 S.W.2d 633, 635[1] (Mo.1960). The import of the appellant's argument under Point II is that it met this burden but that the court "ignored compelling contrary evidence" which established that the Blackwell Mustang was in fact furnished for the use of Cole. Most of the "compelling evidence" cited in its brief pertains to matters about which there is very little, if any, material conflict or dispute, and the record is absolutely devoid of the slightest indica-

tion that the learned trial judge "ignored" any of the evidence before it.

■ A matter raised under Point II which should also be noted is appellant's assertion that this Court should give no deference to the greater opportunity of the trial court to have judged the credibility of the witnesses as provided in Rule 73.01.3(b) and in a myriad of Missouri decisions. The factual background of this contention is that four days after the accident of June 15, 1975, one of its representatives and a video tape operator secured video-taped statements from Cole and Blackwell. The circumstances appear that these men went to those defendants' apartment on June 19, 1975 and secured such statements in the back yard of that place because the inside light was insufficient. Cole testified that at the time he had secured his discharge from the hospital, he was at home in bed suffering from two injured vertebrae in his neck, was wearing a neck support, was in great pain, and had to be helped down to the back yard. He had no recollection of this incident until his deposition was taken in April of 1976 when he was shown a transcription of his statement. He was on that occasion examined at great length as to the content of that original statement and the deposition contains many quotations therefrom. Blackwell's deposition was taken in June of 1976, in Utah, where he was then making his home, and the same procedures were followed.

Parts of Cole's deposition were offered by the appellant as admissions against interest, and received at the trial of this cause, the video-taped statement was shown to the trial court, and the transcription of that statement was offered and received in evidence. Cole testified at the trial in person, and the tape, transcription thereof, deposition, and his trial testimony are now on file in this Court.

Blackwell did not testify in person at the trial, but apparently his video-taped statement was shown to the trial judge and his entire deposition was offered and received in evidence. The transcription of the video-

taped statement was not offered nor is it filed as part of the record here. The tape and deposition are, however, on file in this Court. Blackwell was extensively examined upon the transcription of his videotaped statement at the taking of his deposition. It is to be presumed that able counsel for the plaintiff brought out in the depositions of both Cole and Blackwell (which have each been carefully read and studied by this Court) anything helpful to the plaintiff or affecting the credibility of the witnesses upon those occasions.

The appellant cites those cases which hold that where the evidence before a court in a jury-waived or bench-tried case consists of testimony submitted to the trial court on depositions and exhibits, the usual deference accorded the determination of a factual issue by a trial court because of its better position to judge of the credibility of witnesses is inapplicable, and, in such a case, that element of credibility can be judged at the appellate level to the same extent as by the trial court. *Giokaris v. Kincaid,* supra, at l.c. 635[1]; *Meyers v. Smith,* 375 S.W.2d 9, 13[1] (Mo.1964); *Ehrle v. Bank Bldg. and Equipment Corp. of America,* 530 S.W.2d 482, 489[2] (Mo.App.1975) (where the deference rule was given limited application where most of the evidence was by deposition).

The existence and propriety of this general rule is clear and applicable here, at least to a limited extent, as to the Blackwell testimony. It has no application as to Cole's testimony since he testified at the trial and deference must be accorded to the superior opportunity, thus afforded the trial court, to judge his credibility.

The evidence may be thus summarized:

About April 1, 1975, the defendant Rex Cole moved into an apartment at 842½ Lake Drive, Independence, Missouri. He was then the owner of a 1965 Ford Station Wagon, insured under the policy here involved for Bodily Injury and Property Damage Liability, Medical Payments, and Uninsured Motorist coverage *only.* He carried no comprehensive, collision or other coverage. He was employed as a brakeman

on the extra board of a railroad and was subject to call at any time, on two hours notice, although his working time was usually during the daylight hours.

In about the middle of April, 1975 the defendant Dwight Blackwell moved into this apartment with Cole. The arrangement between them was that they each paid one-half of the rent, each furnished their own quarters, arranged for their own meals, and generally operated upon an independent basis. Blackwell owned a 1966 Mustang automobile although the record title was in his mother's name. He was employed at a food company and worked from 11:00 P.M. to 7:30 A.M. five or six days a week, and obtained his sleep during the daytime. The Mustang and Ford automobiles when not in use were parked across the street in a vacant lot. This living arrangement had continued for approximately two months before the accident of June 15, 1975.

Blackwell gave Cole a set of keys to the Mustang sometime after he moved into the apartment so that he could use it to start the Ford when Blackwell was asleep. He stated at one point that Cole used the car two, three or four times a week. At other times, he would not use it for a whole week. Blackwell said Cole could use it "whenever he needed it" and that he put no restrictions on that use; that Cole upon two or three occasions bought gas (around $1.00 worth) for the Mustang and that on one occasion Cole helped Blackwell and his father put a motor, which had been rebuilt, into the Mustang.

Cole testified that about three weeks before the accident he began to have trouble with the alternator on his Ford, which ran the battery down; that prior to that time he seldom used the Mustang at all except on occasions to go around the corner to get something to eat; that when he was having car trouble he would use the Mustang to jump start his Ford in the parking area two or three times a week; that he had the keys so that he would not have to awaken Blackwell; that he regularly used his Ford to go to and from work and for all his

business and social reasons; that he preferred to drive his own car; that occasionally he and Blackwell would use the Mustang together for social occasions and he would buy a little gas for it and that when he used the Mustang for reasons other than to start his own car he would ask Blackwell's permission and was sometimes refused. On the day of the accident, he took the Mustang to get some ice and cigarettes, Blackwell was asleep, and he did not ask his permission. This was the first time he had used the car to go anywhere without Blackwell's permission.

Blackwell stated that he never drove Cole's Ford and the record does not show that anyone else drove it. Blackwell stated further that 95% of the time Cole used the Mustang was to jump start the Ford; that "I told him he could use it".

As previously stated, the sole factual question which the trial court was required to find was whether or not the Mustang was furnished for Cole's regular use under the terms of the provisions in the insurance policy covering "Use of Other Automobiles". The broad purpose of such policy provisions is to cover *"occasional or incidental* use of other cars without the payment of an additional premium, but to exclude the *habitual* use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium". (Emphasis added). 86 A.L.R.2d, p. 940, § 2. The key word here involved is "regular", which in its ordinary and plain meaning imparts something of a steady or uniform course, practice or occurrence as opposed to occasional or incidental. To come within the scope of the exclusionary clause in this case the use of the Mustang automobile by Cole would have to be "habitual".

In the case of *State Farm Mutual v. Western Casualty,* supra, the automobile policy contained an exclusion as to the operation of other automobiles "furnished or available for the frequent or regular use" of the named insured. In contemplation of the purchase of a new vehicle the insured had placed the car designated in the policy

with a dealer for sale and the dealer gave the insured a company-owned car to drive until the transaction was completed. Insured and his family drove this non-owned automobile for a little over a month when it was involved in a collision. The Missouri Supreme Court en Banc held that the insured's policy covered the resulting loss and that the policy exclusion as to driving other automobiles did not apply. In so doing, the Court noted the purpose of the "drive other cars" provisions and commented that some courts have ruled this question solely or primarily upon the basis of the purpose for which the non-owned automobile was furnished, rather than on the quantum of its use, and other courts have decided the question of applicability of the exclusion clause on the basis of length or type of use rather than purpose. The court there declared (l.c. 424[2]):

> "* * * we conclude that we should not limit ourselves either to a test of merely determining motive or purpose or one of simply measuring length and extent of availability of use. Rather, *each case should be decided on its own facts,* and the court should take into consideration the *type* and *length of use,* the *purpose* for which the non-owned automobile was furnished, and *any other pertinent facts,* including a determination of whether the use and purpose was in harmony with or violative of the objective of the 'non-owned automobile' clause." (Emphasis added)

This Court in *Farmers Insurance Company, Inc. v. Morris,* 541 S.W.2d 66 (Mo.App. 1976) adopted and applied the principles stated above in *State Farm v. Western* to the analysis of the facts in that record, in the light of the purposes of the "non-owned automobile" provisions and the exclusion in the Farmers policy withdrawing coverage on non-owned automobiles "regularly or frequently used" by the insured or any resident of the same household. This Court in *Farmers* concluded that the exclusion provision was applicable under facts vastly different from the facts under consideration in this case. In *Farmers,* the insured's wife

was shown to have regularly used a car owned by her son over a period of four or five years for shopping, trips to the hairdresser, driving to and from work, and of going on two vacations. The principles in the *State Farm* and *Western* cases are applicable, adopted and followed in the result here reached under the facts of this case.

In the analysis of all the record there is substantial evidence to support a finding that Cole's use of the Mustang was occasional and incidental and not habitual and for short periods of time, usually for the purpose to jump start his Ford in the off-the-street lot where the cars were parked; he used his own Ford car for his principal transportation needs; his infrequent use of the Blackwell Mustang upon the streets was confined to going to a drive-in food place in the neighborhood, upon which occasions he asked Blackwell's permission; and, his having a key to the Mustang was to avoid disturbance of Blackwell's daytime sleep when he needed the Mustang to jump start his Ford. Cf. *Kentucky Farm Bureau Mut. Ins. Co. v. Hill,* 278 S.W.2d 729 (Ky. App.1955); *Pacific Automobile Ins. Co. v. Lewis,* 56 Cal.App.2d 597, 132 P.2d 846 (1943); *Juzefski v. Western Casualty & Surety Co.,* 173 Cal.App.2d 118, 342 P.2d 928 (1959).

An important, pertinent fact in this case (which also distinguishes it from the facts in the court's opinion in the *Farmers v. Morris, supra,* decision) is that there is no evidence whatsoever that anyone ever drove the Cole Ford other than Cole. Upon the rare occasions and brief periods when he was operating the Mustang on the streets and thus exposing the appellant-insurer to potential liability under the coverages extended by its policy, the Ford was not being driven, was off the street, and since there was no comprehensive coverage on it, the insurer was not exposed to any possible liability by reason of its coverage of the Ford. Under the facts in this record, there was no such lack of harmony with the principles of the non-owned automobile clause, such as would exist where there was regular use of two automobiles so as to create double exposure to liability for one

premium, as was the case in *Farmers v. Morris,* supra.

There was substantial evidence to support the trial court's finding that on June 15, 1975 the Blackwell Mustang automobile was not "furnished for the regular use" of Cole and such finding was not against the weight of the evidence. Certainly, this Court cannot reach a firm belief that the judgment, upon this record, is wrong. *Murphy v. Carron,* supra.

Appellant's Points I and II are ruled against it.

The judgment is accordingly affirmed.

All concur.