**Matthew J. SPICER, by his successor guardian, Earl SPICER, and Angela Spicer, Appellants,**

**v.**

**Sandra Jean JACKSON, deceased, by Kenneth BERRA, defendant ad litem, Respondent.**

**No. WD 46898.**

Missouri Court of Appeals, Western District.

May 11, 1993.

Michael Elbein, Kansas City, for appellants.

Lance Wolf LeFevre, Kansas City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

FENNER, Presiding Judge.

Appellants, Matthew J. Spicer, by his guardian Earl Spicer, and Angela Spicer, Matthew Spicer's wife, appeal the judgment of the trial court granting summary judgment to respondent, defendant ad litem Kenneth Berra.

The underlying cause was a civil action for money damages arising out of an automobile accident which occurred on February 22, 1988. At the time of the accident, Matthew Spicer was driving a 1987 Nissan pickup truck and Sandra Jackson was driving a 1984 Ford. Matthew Spicer was in-

jured as a result of the accident and Sandra Jackson died from injuries she sustained in the accident.

Matthew Spicer brought suit against Sandra Jackson alleging that his injuries were caused by her negligence. Angela Spicer also sued for her expenses and loss of consortium. Since Sandra Jackson was deceased and the plaintiffs represented that they were entitled to recover from two insurance policies issued by Farmers Insurance Company, Inc. (Farmers), a defendant ad litem, Kenneth Berra, was appointed pursuant to section 537.021.1(2), RSMo 1986.

The Farmers policies in question were issued to Sandra Jackson's husband, Earl Jackson. Sandra Jackson was an insured under the terms of the policies. However, each of the policies excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance or the use of any vehicle other than your insured car, which is owned by or furnished or available for regular use by you or a family member."

Kenneth Berra filed a motion to dismiss or in the alternative for summary judgment arguing that the automobile driven by Sandra Jackson at the time of the accident was a vehicle other than the insured car under the Farmers policies which vehicle was furnished or available for Sandra Jackson's regular use. Therefore, Berra maintained that coverage was excluded under the terms of the policies. The trial court granted summary judgment in favor of Berra.

■ In their sole point on appeal, appellants argue that the trial court erred in granting summary judgment. Appellants argue that coverage under the Farmers policies was not excluded because the vehicle Sandra Jackson was driving at the time of the accident was not furnished or available for her regular use.

In addressing a summary judgment, an appellate court must review the entire record in the light most favorable to the party against whom the trial court entered judgment. *Fisher v. Scott & Fetzer Co.,* 664 S.W.2d 662, 663 (Mo.App.1984). A trial court may enter summary judgment where the pleadings, depositions and admissions on file, together with the affidavits, if any, show that no genuine issue of material fact exists and that the law entitles the moving party to a favorable judgment. *Ronollo v. Jacobs,* 775 S.W.2d 121, 125 (Mo. banc 1989); Rule 74.04(c).

■ There is no dispute that proof of the existence of liability insurance coverage which insured the deceased tortfeasor is essential to the maintenance of an action against a defendant ad litem appointed pursuant to section 537.021.1, RSMo 1986, and that the absence of such proof renders the appointment of a defendant ad litem erroneous. *State ex rel. Kasmann v. Hamilton,* 731 S.W.2d 345, 348 (Mo.App.1987). It is also clear that the vehicle in question was a vehicle other than the insured vehicle under the Farmers policies. The dispute between the parties is on the question of whether the vehicle driven by Sandra Jackson at the time of the accident was "furnished or available for her regular use."

The record reflects that the 1984 Ford driven by Sandra Jackson at the time of the accident was supplied by her employer, Missouri Valley Human Resource Development Corporation (MVHRDC). Mrs. Jackson was in the scope and course of her employment, as a Head Start Program home visitor, at the time of the accident. Mrs. Jackson had used the vehicle in question for business purposes for a period of approximately six months from September 7, 1987 to the time of her death, the accident on February 22, 1988.

MVHRDC had a policy which prohibited Mrs. Jackson from using the vehicle for personal business. However, Mrs. Jackson was allowed to take MVHRDC's vehicle home at night so she could begin her work day from her home in the morning.

The construction of the phrase "furnished or available for the frequent or regular use" of the insured was addressed by the Missouri Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Western Casualty and Surety Co.,* 477 S.W.2d 421 (Mo. banc 1972). In *State*

*Farm,* the relevant policy language referred to coverage on "non-owned" automobiles and provided, in pertinent part, as follows:

> If the named insured ... during the policy period ... owns an automobile covered by this policy ... such insurance as is afforded by this policy with respect to the owned automobile ... applies to the use of a non-owned automobile.... Non–Owned Automobile—means an automobile ... not (i) owned by, (ii) registered in the name of, or (iii) *furnished or available for the frequent or regular use of the named insured,* ... other than a temporary substitute automobile.

*Id.* at 423 (emphasis added).

As in the case at bar, the only real issue in *State Farm* was whether the vehicle in question was "furnished or available for the frequent or regular use" of the insured so as to exclude coverage. The court held that the factors to be considered in determining that question depended on the facts of each case and should include the following: 1) the type and length of use of the vehicle in question; 2) the purpose for which the non-owned automobile was furnished; 3) whether the use and purpose to which the vehicle was put was in harmony with or violative of the objective of the "non-owned automobile" clause; and 4) any other pertinent facts. *Id.* at 424. The court stated that the purpose of the non-owned automobile clause was to cover occasional or incidental use of other cars without the payment of an additional premium, but to exclude coverage for the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium. *Id.* at 424.

In *State Farm,* the insured automobile under the policy in question was a 1964 station wagon owned by Mr. and Mrs. Sphar. The Sphars left their station wagon with an automobile dealer to be sold by the dealer. The Sphars were contemplating purchase of a new car and the dealer allowed them to drive a 1967 Chevrolet pending completion of their dealings. Title to the 1967 Chevrolet was not transferred to the Sphars. However, the Sphars continued to use the vehicle while the parties were apparently waiting to complete the purchase of a new car. After the Sphars' 1964 station wagon was sold by the dealer, and while the Sphars were still driving the dealer's 1967 Chevrolet, an accident occurred. *Id.* at 422–23. State Farm stipulated that its policy was outstanding and the premium paid at the time of the accident in question. *Id.* at 425.

In weighing the facts presented in *State Farm,* the court considered that the dealer's 1967 Chevrolet was used by the Sphars for a period of approximately six weeks, during which time the Sphars' 1964 station wagon was either in the possession of the dealer for sale or had been sold and was not being used by the Sphars. *Id.* at 424. The court placed significance in this fact because it reflected that the Sphars were not operating two vehicles at the same time and they were not seeking coverage for the simultaneous use of two vehicles while they had only paid a premium for one vehicle. *Id.* at 424. The court reasoned that if coverage were not afforded to the Sphars, State Farm would have received a premium without providing any coverage to the Sphars since their vehicle had been sold. *Id.* at 425. The use of the 1967 Chevrolet by the Sphars was held to be in harmony with the purpose of the "non-owned automobile" clause because there was no increased risk presented to State Farm since the insured vehicle was not in the possession or use of the Sphars at the same time as the 1967 Chevrolet. *Id.* at 425–26. The court found that State Farm's policy covered the "non-owned" 1967 Chevrolet. *Id.* at 426.

Cases subsequent to *State Farm,* which apply the criteria established in *State Farm,* place significant emphasis on whether the facts are in harmony with the purpose of a "non-owned automobile" clause to eliminate increased risk without an increase in premium.

In *Farmers Insurance Co. v. Morris,* 541 S.W.2d 66 (Mo.App.1976), a non-owned automobile was found to have been used on a regular basis for unlimited purposes

while the insured automobile was available for and regularly used by the parties insured. Accordingly, in said case, the court held that the non-owned automobile was not covered because of policy language excluding coverage for a non-owned automobile that was "regularly or frequently used" by the insured. *Id.* at 70.

In *Government Employees Insurance Co. v. Johnson*, 586 S.W.2d 367 (Mo.App. 1979), the insured, Paul Fuchs, was operating a car that was furnished by his employer when there was an accident. *Id.* at 367. In considering the criteria established in *State Farm*, the court found that Fuchs had used the company car for two months for both company and personal purposes and that Fuchs also made simultaneous use of the vehicle covered under his insurance policy. *Id.* at 368. The court held that the common use of both the insured vehicle and the company vehicle was not in harmony with the non-owned automobile clause of the insurance policy and, therefore, held that coverage was excluded. *Id.* at 368.

Applying the criteria of *State Farm* to the case at bar, we look first to the type and length of use of the company vehicle by Sandra Jackson. The record reflects that Sandra Jackson had been using the vehicle for daily business throughout each work day for a continuous period of approximately six months. Thus, Sandra Jackson's use of the vehicle was more than occasional or incidental.

Next, in considering the purpose for which the company vehicle was furnished, the record reflects that Sandra Jackson was to use the vehicle for business purposes throughout the course of her business day. Although the purpose was limited to business, the vehicle was in her use each business day throughout the day on an indefinite and recurring basis to meet her business transportation needs.

Other relevant factors are that Mrs. Jackson was allowed to keep her employer's vehicle at her home and drive it to and from her work assignments without further authorization. Mrs. Jackson was also responsible for attending to the maintenance of the vehicle. These factors further support the frequency and regularity of use of the vehicle by Mrs. Jackson.

Finally, in considering whether the extension of coverage under the Farmers policies to the 1984 Ford, owned by MVHRDC but driven by Sandra Jackson, would be in harmony with the objective of the exclusion under the policy, we find that it would not.

The record reflects that the Jacksons owned two vehicles which were insured under their policies with Farmers. Even though Mrs. Jackson could obviously not drive both vehicles at the same time, her husband could operate one of the vehicles and another individual could operate the other vehicle, within the terms of the policies, while Mrs. Jackson was using her employer's vehicle. The record establishes that Mrs. Jackson's use of her employer's vehicle was much more than occasional or incidental. Mrs. Jackson used her employer's vehicle on a frequent and regular basis and, based on the record before us, increased the risk on the insurance company without a corresponding increase of premium.

The increased risk to the insurance company was that the Jacksons had three vehicles in their possession and available for their actual or permissive use for a recurring, extended and indefinite period of time. Extending coverage for the increased risk presented by the Jacksons having three vehicles available for their use is not in harmony with the exclusion for a non-insured vehicle "furnished or available for regular use."

The judgment of the trial court is affirmed.

All concur.