**Dene DRURY, Appellant,**

v.

**BLUE CROSS/BLUE SHIELD OF MISSOURI, Respondent.**

No. 70416.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 15, 1997

Thomasson, Gilbert, Cook, Remley and Maguire, Jeffrey S. Maguire, Cape Girardeau, for appellant.

Johnson, Montgomery & Maguire, Michael H. Maguire, Cape Girardeau, for respondent.

KAROHL, Judge.

Plaintiff, Dene Drury, appeals from a judgment in favor of defendant insurance company, Blue Cross/Blue Shield. Drury sought payment from Blue Cross/Blue Shield, her medical insurance company, for medical expenses incurred from exploratory surgery which determined she suffered from a uterine septum. Blue Cross/Blue Shield denied her claim because of a policy exclusion for treatment of preexisting conditions in the first year of coverage. It argued the medical treatment she received was for a preexisting condition. We affirm.

Drury began working full-time for M & W Packaging in November 1993. M & W offered voluntary medical insurance coverage with Blue Cross/Blue Shield to its employees, which Drury accepted. She officially became insured under the policy on December 1, 1993.

In 1993, prior to Drury's enrollment with Blue Cross/Blue Shield, she began treatment with Dr. Michelle de Vera, a gynecologist, for "long-standing secondary infertility." Dr. de Vera performed a series of tests to determine the cause of her infertility. In July 1994, Dr. de Vera referred Drury to Dr. Daniel Williams. In a letter to Dr. Williams, Dr. de Vera described the procedures she performed in 1993 and noted the possibility of a "bicornuate v. septated" uterus.

Dr. Williams conducted another series of tests on Drury. Unable to definitively diagnose the cause of her infertility, he performed exploratory surgery in October 1994. The surgery revealed she had a uterine septum. In a letter to Dr. de Vera, Dr. Williams provided an update of his procedures on Drury and said the ultimate goal of the tests was "to successfully assist [Drury] in her efforts to conceive."

Drury received pre-authorization from Blue Cross/Blue Shield prior to the surgery. After the operation, she submitted the surgical medical bills for payment. It denied her claim. After conducting a review of her medical records, it concluded the care she received in October 1994 was related to a preexisting condition, infertility, which was excluded under her policy.

At trial, Drury offered the deposition of Dr. Williams in which he testified Drury's condition, uterine septum, was not diagnosed until the surgery in October 1994 and therefore could not be considered preexisting. Further, the only way to definitively diagnose a uterine septum was by the exploratory surgery.

Drury also offered the testimony of two Blue Cross/Blue Shield employees who reviewed the claim she filed. Shelly Maeys testified she was asked to review the claim to determine whether, prior to the effective date of the policy, there was any "care related to [Drury's] infertility" or more specifically for "congenital anomalies of genital organs." Jeanette Morian testified the preexisting condition was "congenital anomalies of the uterus and adhesions."

Blue Cross/Blue Shield offered the expert testimony of Dr. Margarethe Hagemann. She testified the preexisting condition was infertility. She based this opinion on her review of Dr. de Vera's operative reports which identified the problem of infertility from tests performed on Drury in 1993.

The trial court entered judgment for Blue Cross/Blue Shield after finding the claim was barred on a preexisting condition. Drury appeals. She argues the trial court erred in finding for Blue Cross/Blue Shield because: (1) it failed to carry its burden of showing the

applicability of the preexisting condition exclusion, or (2) the insurance policy is ambiguous as a matter of law in that the term "condition" is unclear and indistinct. Because the two points are interrelated, we will decide them together.

■■■ We will not disturb the trial court's order unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Where an insurer seeks to escape coverage because of a policy exclusion, the burden is on the insurer to prove facts which would make the exclusion applicable. *Kenilworth Insurance Company v. Cole*, 587 S.W.2d 93, 97 (Mo.App.1979).

■■ The parties do not agree on which preexisting condition language controls; the language in the group insurance contract issued by Blue Cross/Blue Shield to M & W Packaging or the language in the employee policy brochure of M & W. The contract states:

## ARTICLE I  DEFINITIONS

. . . .

CONDITION. Any illness, disease, bodily injury, bodily defect or abnormality representing an interruption, cessation or disorder of body functions, systems or organs. Condition includes signs and/or symptoms which may indicate an underlying illness, disease, bodily injury, bodily defect or abnormality.

. . . .

PREEXISTING CONDITION: Any Condition that existed prior to the Participant's Enrollment Date if, within a period of 5 years prior to the Enrollment Date, one or more of the following applied:

1. The Condition was known to the Participant; or,

2. The Participant exhibited signs and/or symptoms of the Condition and the Condition could have been diagnosed with reasonable certainty by a Physician; or,

3. The Participant had been under a Provider's Care or a Provider had recommended Care for the Condition; or

4. The Condition had been diagnosed by a Provider.

. . . .

NOTE: BCBSMo will have the sole discretion in interpreting the definition of a Preexisting Condition and in determining whether or not a Preexisting Condition exists.

## ARTICLE XII—MEMBERSHIP EXCLUSIONS AND LIMITATIONS

. . . .

D. Unless otherwise specified ... Care for Preexisting Conditions is a Membership Benefit only when received after the Participant has been continuously enrolled under this Certificate ... for a period of one year.

The employee brochure contains an explanation that "condition [in the Blue Cross/Blue Shield policy] not only means an illness or injury but also a sign or symptom." The text then continues, explaining:

In other words, a condition that has not been diagnosed or treated will be considered preexisting, if you had a sign or symptom that you knew about, or if you had a sign or symptom of a condition that could have been diagnosed by a provider of care.

For the preexisting condition exclusion to apply, a condition must fall within one of four categories. Drury argues her condition was uterine septum which was not diagnosed or known, and could not be known, until the exploratory surgery performed in 1994, after the policy became effective. As such, she argues her condition does not fit within any of the four categories which make her condition preexisting and her claim is not excluded from payment.

Blue Cross/Blue Shield argues Drury's condition was infertility. It relies on the medical records of both treating physicians

which identify Drury's inability to conceive as the purpose of her medical treatment and subsequent surgery. Blue Cross/Blue Shield also argues the term, "condition", in the contract and brochure is an unambiguous provision and that it has sole discretion in interpreting and determining whether a preexisting condition exists.

The definition of condition, as found in both the contract and brochure, is in two parts. The first part defines condition as "any illness, disease, bodily injury, bodily defect or abnormality." The second states that the term condition also includes "signs and/or symptoms which may indicate an underlying illness, disease, bodily injury, bodily defect or abnormality."

For several reasons, the second part of the definition tends to support the trial court's judgment for Blue Cross/Blue Shield. First, if we consider uterine septum to be the underlying illness or bodily defect, as argued by Drury, any symptom and/or sign of that condition would result in it being classified as preexisting. Dr. de Vera's records, including letters with Dr. Williams, indicate the tests, conducted in 1993, revealed the possibility of a septated uterus. Thus, a sign existed to alert Drury and her physicians of a uterine septum.

Second, if we consider infertility to be the underlying illness or bodily defect, as Blue Cross/Blue Shield argues, again we find uncontested evidence of known "signs and/or symptoms." The medical records and testimony support a finding there was a preexisting problem of infertility. Additionally, they chart her medications and tests she underwent in 1993 in an attempt to determine the cause of her infertility.

Under either choice, there was evidence sufficient to support a finding symptoms and/or signs existed prior to the 1994 surgery which alerted Drury of the possibility of both a uterine septum and infertility. Blue Cross/Blue Shield met its burden of proof and the exclusion provision is applicable.

In the alternative, Drury argues the policy is ambiguous in that the term condition is so unclear the policy should be held to cover her bills. Because the experts used the word condition to describe her infertility, uterine septum and congenital anomalies of the uterus, she contends the word condition has, at least, different meanings. Ambiguity arises in an insurance policy when there is duplicity, indistinctness or uncertainty in meaning. *Walters v. State Farm Mutual Automobile Insurance Company*, 793 S.W.2d 217, 219 (Mo.App.1990). However, a contract is not ambiguous merely because the parties disagree over a provision's meaning. *Parker v. Pulitzer Publishing Company*, 882 S.W.2d 245, 249 (Mo.App. E.D.1994).

Here, the policy provides a definition of the term condition. The definition is all-inclusive, including both an underlying illness and any symptoms or signs of that underlying illness. That fact alone does not make it indistinct or uncertain. The parties' disagreement as to the identity of the underlying illness does not render the policy ambiguous. Moreover, the "signs and/or symptom" language is unambiguous.

We affirm.

RHODES RUSSELL, P.J., and SIMON, J., concur.