**Chastity VEGA, Respondent,**

v.

**SHELTER MUTUAL INSURANCE COMPANY, Appellant.**

**No. WD 64135.**

Missouri Court of Appeals, Western District.

March 1, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 2005.

Application for Transfer Denied May 31, 2005.

James C. Spangler, Sedalia, MO, for appellant.

Mark D. Pfeiffer, Columbia, MO, for respondent.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Shelter Mutual Insurance Company appeals the trial court's judgment in favor of Chastity Vega for $50,000 in underinsured motorist coverage as a result of an accident in which Ms. Vega was injured.

On June 22, 2001, John and Chastity Vega[1] were husband and wife. John owned a 1988 Chevy S10 pickup, and Chastity owned a 1993 Dodge Shadow. Both vehicles were insured by Shelter. On that day, Chastity was operating her 1993 Dodge Shadow in a southbound direction just outside of Hallsville, Missouri. At the same time, Robert Hartley was traveling northbound when he negligently crossed the centerline and collided with Chastity's vehicle. As a result of the collision, Chastity sustained fractures to her left pelvis, right knee, and left elbow. She also had a significant forehead laceration and additional soft tissue injuries. She incurred medical bills totaling $74,196.96, and it was stipulated that Chastity's damages as a result of the car wreck were in excess of $75,000. Additional facts will be detailed as needed later in this opinion.

Mr. Hartley was insured by State Farm Insurance Company. In light of Mr. Hartley's negligence, State Farm immediately tendered its policy limits of $25,000 to Chastity. On July 2, 2001, counsel for Chastity made demand on Shelter for underinsured motorist coverage of $50,000. On July 6, 2001, Shelter issued a denial of coverage letter for the underinsured motorist coverage requested. Thereafter, Chastity filed the instant action against Shelter in two counts, the first being for breach of contract and the second for negligent misrepresentation.

On March 12, 2004, the case was tried to the court sitting without a jury upon a stipulation as to some facts, as well as testimonial and documentary evidence. On March 31, 2004, the trial court entered its judgment on Count I (breach of contract) in favor of Chastity Vega, awarding her damages in the amount of $50,000 plus interest, at the rate of 9% per annum, from July 6, 2001, until the date the judgment is satisfied. The court ruled in favor of Shelter on Count II (negligent misrepresentation). Shelter brings this appeal from the judgment on Count I.

Shelter presents one point on appeal. It contends the trial court erred in entering judgment in favor of Chastity Vega on Count I of the First Amended Petition because the Shelter policy covering her vehicle did not contain underinsured motorist (hereafter "UIM") coverage and the UIM coverage in John Vega's Shelter policy does not apply when an insured (Chastity, in this case, under the definition in the policy) occupies a motor vehicle other than an "insured auto," which she owns, and Chastity's 1993 Dodge Shadow was not an "insured auto" as defined by the policy.

The issue in this case is whether Chastity's injuries were covered by underinsured motorist coverage on either her 1993 Dodge Shadow or her husband's 1988 Chevy S10. The interpretation of the meaning of an insurance policy is a question of law. *Heringer v. American Family Mut. Ins. Co.*, 140 S.W.3d 100, 102 (Mo.App. W.D.2004). "On appeal, questions of law receive de novo review, giving no deference to the trial court's decision."

---

1. For ease of identification, we will refer to Mr. and Mrs. Vega by their first names, John and Chastity, throughout this opinion. By doing so, we intend no disrespect.

*Boulevard Inv. Co. v. Capitol Indem. Corp.*, 27 S.W.3d 856, 858 (Mo.App. E.D. 2000).

> The general rules for interpretation of contracts apply to insurance policies. If an insurance policy is unambiguous, it is enforced as written absent a statute or public policy requiring coverage. If the language of the policy is ambiguous, it is construed against the insurer. An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. The language of an insurance policy is ambiguous when it is reasonably and fairly open to different constructions. To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy. Where an insurer seeks to avoid coverage under a policy exclusion, it has the burden of proving the applicability of the exclusion.
>
> Generally, if a term is defined in an insurance policy, a court will look to that definition and nowhere else. If a term within an insurance policy is clearly defined, the policy definition controls. If a conflict arises between a technical definition of a term and the meaning of the term which would reasonably be understood by the average lay person, the lay person's definition will be applied, unless

it is obvious the technical meaning was intended.

*Heringer*, 140 S.W.3d at 102–03 (internal citations and quotations omitted).

 Initially, we must address a matter disputed by the parties, and that is whether John and Chastity had two insurance policies with Shelter, one on each vehicle, or one policy covering two vehicles. Shelter contends that there were two policies, one on each vehicle. Respondent argues, and the trial court found,[2] that there was one policy covering two vehicles. The trial court apparently based its finding on (1) Chastity's testimony that she and John only received one copy of Shelter's policy form number A–20–A (albeit they did receive separate Declarations pages and billings), (2) the fact that the policy numbers listed on the Declarations pages were identical except for the last numbers in each, 24–1–3753230–1 and 24–1–3753230–2, and (3) testimony from Shelter agent Holsinger that the first ten numbers of a policy number are known as a "family number," and the last number is a "unit number."[3] Respondent further argues that the trial court's determination that there was one policy was a factual finding to which we must defer pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The whole issue of one policy or two is a red herring. The parties agree that there was a separate Declarations page for each

---

**2.** The trial court's March 31, 2004 judgment did not contain findings of fact and conclusions of law. However, on March 19, 2004, the trial court entered a rather informal "order" making certain factual findings, reciting what the judgment would be, and directing Plaintiff's counsel "to file proposed judgment no later than 5 PM April 5, 2004, when Clerk shall deliver file to this 'Division' " (sic).

**3.** Dave Holsinger did not testify at trial, but Plaintiff's counsel offered into evidence Plaintiff's Exhibit 9, which contains excerpts from his deposition. Shelter objected to the admis-

sion of the deposition testimony and counsel for Plaintiff stated: "I would be happy to offer the full testimony, the entire transcript, if the Court prefers that." The trial court ruled that the deposition would be admitted, subject to Shelter's objection, and that the court would make an "ultimate" ruling later on the admissibility of the deposition testimony. There is no further indication in the record whether the court admitted or considered all, part, or none of the Holsinger deposition.

vehicle, and those pages are part of the record on appeal. Both Declarations pages reflect the policy form number of which it is a part, that being Shelter policy form number A–20–A. That is the printed policy form that was provided to John and Chastity, and it doesn't really matter whether they received one or two copies of the policy form because that policy form contained the insuring agreement that covered both vehicles. The very first sentence on page 1 of policy form A–20–A, appearing immediately after the heading "**THE INDEX**" and the sub-caption "**WHERE CAN YOU FIND IT**," states: "**Declarations**—The insured vehicle, policy period, coverages and amount of insurance you have." Following this on page 1 is the remainder of the index and then the very first paragraph on page 2 provides, in pertinent part:

### AGREEMENT

**We** agree to insure **you** according to all the terms of this policy,

> (1) in reliance on **your** statements in the Application and in any Application for Change and in the Declarations, made a part hereof, and
>
> (2) based on **your** payment of the premium.

When **you** pay the premium, this policy provides the insurance **you** chose, as shown in the Declarations.[4]

The policy language states in clear and unequivocal terms that the Declarations page is part of the insuring agreement (policy form number A–20–A) and describes (a) the vehicle insured, (b) the term of the policy, (c) what coverages apply to that vehicle, and (d) the amount of insurance. The policy language then goes on to declare that, when the premium is paid, the policy provides the insurance "as shown in the Declarations." There is no ambiguity here; there is no "duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Heringer*, 140 S.W.3d at 103.

■ "The interpretation of policy terms, which are not ambiguous, is a question of law and, as such, an appellate court is not required to defer to the findings of the trial court." *Knipp v. Truck Ins. Exch.*, 857 S.W.2d 281, 284 (Mo.App. W.D.1993). Since there was a Declarations page for the 1993 Dodge Shadow in Chastity's name and a separate one for the 1988 Chevy S10 in John's name; each of them listed the policy period, coverages, and amount of insurance provided for the respective vehicle; and each contained a different policy number, it is clear that there were two policies of insurance, one on each vehicle. Consequently, the trial court's finding in this case that there was one policy covering two vehicles is contrary to the provisions of the policies themselves and, therefore, was erroneous as a matter of law.

Having determined that there were two separate policies, we next look to the Declarations pages for each to determine whether either or both provided UIM coverage. Review of the coverages for Chastity's Dodge Shadow reveals that she carried bodily injury, property damage, medical payments, uninsured motorist, accidental death, comprehensive, and emergency road service. The policy did not include underinsured motorist coverage.

The policy on John's Chevy S10 pickup, however, included coverage for bodily injury, property damage, medical payments, uninsured motorist, accidental death,

---

4. The definitions section of the policy points out that words shown in bold type face in the policy are defined terms.

emergency road service, and underinsured motorist, with limits on the latter of "$50,-000 each person, $100,000 each accident." So the ultimate question in the case before us is whether the UIM coverage in John's policy provided coverage to Chastity for the UIM loss she sustained in her 1993 Dodge Shadow on June 22, 2001.

■ UIM coverage is provided in an endorsement to Shelter policy form number A–20–A. Shelter contends the UIM coverage in John's policy is inapplicable because exclusionary language in the UIM endorsement precludes coverage under the facts of this case, specifically because Chastity was operating a vehicle she owned at the time of the accident. The exclusionary language in question provides that UIM coverage does not apply:

> To **bodily injury** to an **insured** while **occupying** a **motor vehicle** (other than an **insured auto**) owned by **you** or a **relative.**[5]

Chastity, on the other hand, argues that Shelter's reading of the exclusion ignores the parenthetical phrase in the exclusion, in particular the use of the indefinite article "an," as opposed to the definite article "the." She contends that by using "an," the policy contemplates multiple persons that could qualify as the "insured," and multiple automobiles that could qualify as the "insured auto" under the terms of the policy. Noting that she and John insured both their vehicles with Shelter, she reasons that there were multiple "insured autos." Consequently, Chastity concludes that she "sustained bodily injuries as defined by the insurance policy; she was 'an' insured as defined by the insurance policy; she occupied a motor vehicle that she owned; but, most importantly, she occu-

pied "an" insured auto. Therefore, the exclusion ... does not apply to the instant case."

■ The problem with Chastity's argument is that it overlooks the definitions contained in the policy and the endorsement. If a term in an insurance policy is clearly defined in the policy, this definition is controlling. *State Farm Mut. Auto. Ins. Co. v. Ballmer,* 899 S.W.2d 523, 525–26 (Mo. banc 1995).

The UIM endorsement defines **insured auto** to mean either: (a) the **described auto,** or (b) "a **non-owned auto** while being operated by **you.**" The Dodge Shadow was not an **insured auto** because it was not the **described auto** (defined in the policy as "the vehicle described in the Declarations"); the 1988 Chevy S10 pickup is the **described auto** in John's Shelter policy. Likewise, the Dodge Shadow was not an **insured auto** under John's Shelter policy because it was not a **non-owned auto** (meaning any auto *other than* the one described in the Declarations *or* an auto owned in whole or in part by any resident of the household of the insured named in the Declarations or his or her spouse). Chastity owned the Dodge Shadow, and she was a resident of the household of the insured named in the Declarations, that being John Vega. Finally, the definition of "insured auto" further reinforces this by specifically providing that "**insured auto**" does not include "any auto ... owned by a resident" of the household of the insured named in the Declarations. Thus, Chastity's contention that the use of the indefinite article "an" before the term "**insured auto,**" as opposed to the definite article "the," is without merit. In fact, because of

---

**5.** As pointed out in note 3, *supra,* words in the policy in bold type face are defined in the definitions section of the policy. The UIM endorsement contains an "Additional Defini-

tions" section defining certain words and phrases for purposes of their use in the UIM endorsement.

the definitions in the policy, that choice of words is irrelevant.

Since we have determined that Chastity's 1993 Dodge Shadow was not an **"insured auto"** as defined in the policy, we now apply the exclusionary provision as written to see if it excludes coverage for this event. The exclusion provides that UIM coverage does not apply to bodily injury to an insured (Chastity was an insured under the terms of the John's policy) while occupying a motor vehicle (the 1993 Dodge Shadow) other than an insured auto (Chastity's car was not an insured auto on John's policy) owned by you (meaning John or Chastity). Parsed in this manner, it is apparent that the exclusion applies because Chastity was an insured occupying a motor vehicle that was not an insured auto that was owned by her. Consequently, the UIM coverage in John's Shelter policy did not apply to Chastity's injuries resulting from Robert Hartley's collision with her vehicle on June 22, 2001.

Recognizing at least the possibility we would reach this conclusion, Chastity asserts alternatively that the trial court's decision should be affirmed because Shelter's policy is ambiguous. In fashioning this argument, she points first to the testimony of Christopher Schupp, a Shelter corporate representative, to the effect that it can be confusing trying to figure out when UIM coverage applies and when it doesn't. Chastity then notes that if there is an ambiguity in an insurance contract, the contract must be construed against the insurer and in favor of the insured, citing *Behr v. Blue Cross Hospital Service, Inc.*, 715 S.W.2d 251, 255 (Mo. banc 1986). She then refers us to *Killian v. State Farm Fire & Casualty Co.*, 903 S.W.2d 215, 217 (Mo.App. W.D.1995), and *Citizens Insurance Co. of New Jersey v. Kansas City Commercial Cartage, Inc.*, 611 S.W.2d 302, 307 (Mo.App. W.D.1980), for the proposition that this rule of construction is applied even more strongly against the insurer when the insurer is attempting to rely on an exclusion in an insurance policy. Conjoining the Schupp testimony with these two legal maxims, Chastity submits, for the same reasons set forth in her prior arguments, "that one reasonable interpretation of the UIM insurance contract language is that Shelter Insurance would not apply their exclusionary clause as long as you were occupying a vehicle that you insured with Shelter Insurance."

In its Reply brief, Shelter responds by suggesting that Schupp's testimony is irrelevant, that it does not matter how many witnesses testify that policy language is confusing, because the interpretation of the insurance policy language is a question of law to be determined by the court. Shelter further notes that the trial court specifically found that the policy was not ambiguous, a legal determination favorable to it, but asserts that it really doesn't matter, because this court must review all such legal conclusions *de novo*.

Shelter is, of course, correct, as we have previously explained, in that interpretation of the meaning of an insurance policy is a question of law. *Heringer*, 140 S.W.3d at 102. Obviously, whether an insurance policy is ambiguous is likewise a question of law. *Ware v. Geico Gen. Ins. Co.*, 84 S.W.3d 99, 102 (Mo.App. E.D.2002). And also, as we observed *supra*, "[o]n appeal, questions of law receive *de novo* review, giving no deference to the trial court's decision." *Boulevard Inv. Co.*, 27 S.W.3d at 858. Thus, contrary to Chastity's argument, Schupp's testimony does not have any determinative effect on the issue, as it might on fact questions, nor do any trial court findings, because we review them *de novo*. Moreover, Chastity's argument as to why the policy is ambiguous is the same as her interpretation of the policy that we

have previously rejected. It overlooks the policy and UIM exclusion definitions.

■ Thus, we must reject Chastity's contention that the policy is ambiguous. The simple "fact that the parties disagree on the interpretation of a term in an insurance policy does not render the term ambiguous." *Ware*, 84 S.W.3d at 102. And, "[w]e may not create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage." *Id.*

■ Finally, there is a procedural matter that Chastity has raised for the first time in her brief on this appeal. She cites *Century Fire Sprinklers, Inc. v. CNA/Transportation Insurance Co.*, 23 S.W.3d 874, 880 (Mo.App. W.D.2000), for the proposition that "an insurance policy exclusion is an affirmative defense that must be pled or may be waived" and argues that Shelter did not plead the UIM exclusion as an affirmative defense and, therefore, waived it. Consequently, she contends that the trial court's decision should be affirmed even if we conclude, as we already have, that the exclusion bars recovery, because Shelter waived it as a defense.

Chastity emphasizes the first part of the holding in *Century Fire Sprinklers, Inc.*, that an insurance policy exclusion is an affirmative defense that must be pled. *Century Fire Sprinklers, Inc.*, 23 S.W.3d at 880. But the holding further states a failure to plead the exclusion as an affirmative defense *may* cause it to be waived. *Id.* In so holding, the court relied on *Heins Implement Co. v. Missouri Highway & Transportation Commission*, 859 S.W.2d 681 (Mo. banc 1993), among other cases. In *Heins*, the appellant asserted on appeal that MHTC's claim of *res judicata* was waived because MHTC failed to plead it as an affirmative defense. 859 S.W.2d at

684–85. Our Supreme Court held that *res judicata*, like other affirmative defenses, must be pleaded and noted that MHTC did not plead it or take any "affirmative steps to raise its claim preclusion defense in a timely fashion." *Id.* at 685. Nevertheless, the Court found that Heins had not objected to MHTC's motion for judgment notwithstanding the verdict (based on *res judicata*) on the grounds that the claim had been waived, but rather had addressed the substantive merits. *Id.* The Court likewise observed that Heins did not object to introduction of evidence at trial about the prior proceedings. *Id.* As a result, the Court declared that "the issue is deemed to have been tried by the implied consent of the parties and must be treated as though it had been raised in the pleadings." *Id.*

The situation here is not unlike that in *Heins*. Chastity's First Amended Petition did not specify under which Shelter insurance policy she was making her claim. Rather, it alleged that a claim was being made under "Policy No.: 24–1–375–3230" which, as noted *supra*, does not identify either policy, as they were number 24–1–375–3230–1 and 24–1–375–3230–2. Consequently, Shelter affirmatively stated in its Answer that there were two separate policies, one of which did not include UIM coverage. Moreover, Chastity knew that Shelter was relying on the exclusion and tried the case on that basis. Her attorney frequently referred to the exclusion from opening argument through closing argument and even introduced evidence regarding it, including Shelter's July 6, 2001 letter denying coverage and the exclusion itself. Similarly, Chastity made no objections before or during the trial to Shelter's reliance on the exclusion. Under these circumstances, we have no hesitation in saying, as the *Heins* Court did, that "the issue is deemed to have been tried by the

implied consent of the parties and must be treated as though it had been raised in the pleadings." 859 S.W.2d at 685.

While we are not unsympathetic to Chastity and the serious injuries she suffered, as noted *supra,* "[w]e may not create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage." *Ware,* 84 S.W.3d at 102. Accordingly, for all of the foregoing reasons, we must reverse the trial court's judgment.

All concur.