Michele BUETTNER and Leonard Buettner, Plaintiffs/Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant/Respondent.

No. ED 87650.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 7, 2006.

---

Patrick Daniel Billington, Union, MO, for appellant.

Daniel E. Wilke, St. Louis, MO, for respondent.

Before ROY L. RICHTER, P.J., KATHIANNE KNAUP CRANE, J., and SHERRI B. SULLIVAN, J.

## OPINION

SHERRI B. SULLIVAN, J.

### Introduction

Michele Buettner and Leonard Buettner (collectively referred to as the Buettners)

appeal from the trial court's judgment in favor of State Farm Mutual Automobile Insurance Company (State Farm) in the Buettners' action seeking underinsured motorist coverage under three insurance policies issued to the Buettners by State Farm. We affirm.

## Background

The Buettners' action was tried below on a Joint Stipulation of Facts. The record before us reveals the following.

On August 19, 2001, Michele Buettner was injured in a motor vehicle accident caused by the negligence of Michelle Pedrotti (Pedrotti). At the time of the accident, Michele Buettner was a passenger in a 1990 Chevrolet S–10 truck owned by the Buettners. As a result of the injuries she suffered, Michele Buettner incurred medical expenses in the amount of $160,000, and her lost earnings totaled $40,000. Her total damages exceeded $500,000.

Pedrotti's insurance company paid the Buettners $100,000, as the limit of Pedrotti's automobile liability insurance policy. State Farm consented to the payment.

At the time of the accident, the Buettners had three automobile insurance policies with State Farm. The Buettners paid separate premiums for each policy and separate amounts for underinsured and uninsured motorist coverage for each policy.

Accordingly, the Buettners demanded payment from State Farm of the limits for underinsured motorist coverage under all three policies. State Farm paid $50,000 to the Buettners under Policy Number 324344–025–25 (listing the Buettners' 1990 Chevy S–10 as the insured vehicle; hereinafter referred to as "Policy A"). After State Farm refused to pay underinsured motorist benefits under the Buettners' other two automobile policies (hereinafter re-

ferred to as "Policy B," listing the Buettners' 1984 Lincoln Town Car, and "Policy C," listing their 1984 Toyota 1/2 ton pickup), the Buettners filed this action, seeking $100,000 as the combined limits of the underinsured motorist coverage of those policies, damages for loss of consortium and vexatious refusal to pay, and punitive damages.

The trial court decided the case upon the parties' Joint Stipulation of Facts, Amendment to the Joint Stipulation of Facts, and exhibits, entering judgment in favor of State Farm on January 13, 2005. The Buettners timely filed their appeal on February 16, 2006.

## Points on Appeal

The Buettners raise two points on appeal: 1) the trial court erred in not allowing the underinsured insurance policies to be stacked because underinsured motorist coverage is floating, personal accident insurance which follows the insured individual wherever she goes and the Buettners paid separate premiums for underinsured motorist coverage for each policy; and 2) the trial court erred in finding that there was no underinsured motorist coverage available under the two policies because State Farm failed to plead or set forth the policy exclusions and the issue was not tried by implied consent.

## Standard of Review

■ The interpretation of the meaning of an insurance policy is a question of law. *Vega v. Shelter Mut. Ins. Co.*, 162 S.W.3d 144, 146 (Mo.App. W.D.2005). We review such questions of law de novo, giving no deference to the trial court's decision. *Id.* at 148.

## Discussion

■ In their first point, the Buettners claim the trial court erred in not allowing

the underinsured insurance policies to be stacked because underinsured motorist coverage is floating, personal accident insurance which follows the insured individual wherever she goes and the Buettners paid separate premiums for underinsured motorist coverage for each policy. "Stacking" refers to an injured insured's ability to recover multiple insurance coverage benefits "either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy that covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo.App. E.D.1999). The existence of underinsured coverage and its ability to be stacked are determined by the terms of the insurance policy; if the policy language unambiguously disallows stacking, courts will not create such extra coverage. *Id.* at 314.

Here, the declaration pages of each of the three policies show that the limit of liability for underinsured motor vehicles is $50,000 per person, and $100,000 per accident. All three policies contain identical clauses defining the limits of liability for underinsured motorist coverage.

In the argument portion of their brief, the Buettners expand somewhat upon their point relied on, appearing to contend also that the policies' sections purporting to limit insureds' ability to stack policies do not apply to them and are ambiguous.

In response, State Farm initially argues that there is no underinsured coverage under Policies B and C because the 1990 Chevy S–10 truck in which Michele Buettner was riding is not listed on the declaration pages of Policies B and C, quoting the following language contained in the three policies:

**When Coverages U and W Do Not Apply**
THERE IS NO COVERAGE UNDER W FOR *BODILY INJURY* TO AN *INSURED:*
1. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED OR LEASED BY *YOU, YOUR SPOUSE,* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY[.]

"Insured" as defined in this section includes Michele Buettner. "You" or "Your" is defined in the policy as "the named insured or named insureds shown on the declarations page."

State Farm urges that due to this anti-stacking language, Policy B, insuring only the Lincoln and not the Chevy S–10 in which Michele Buettner was injured, would not provide underinsured motorist coverage for Michele Buettner's injuries because she was injured in a vehicle she owned but did not have insured under Policy B. Likewise, according to State Farm, Policy C, insuring only the Toyota, would not provide underinsured coverage for the same reason. Asserting that Policy A is the only applicable policy of insurance because only it listed the Chevy S–10, State Farm maintains the Buettners are entitled only to the $50,000 they already have received, as the limit of Policy A's underinsured motorist coverage.

In *Hempen v. State Farm Mut. Auto. Ins.*, 687 S.W.2d 894, 895 (Mo. banc 1985), the Missouri Supreme Court addressed the rule of law that a policy may clearly and explicitly spell out an intention to limit liability to a single coverage and thus foreclose stacking of medical payments coverage. The insured in *Hempen* was injured while riding in a 1967 Chevrolet she owned jointly with her husband. *Id.* at 894. She sought to stack the medical payments coverage of the 1967 Chevrolet with the medi-

cal payments coverage of a separate policy of a 1969 Volkswagen she owned. *Id.* The liability section in each of the *Hempen* policies provided:

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

a. *bodily injury* to others, and

b. damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car* [.]

*Id.* at 895. The definition page of the policy defined "your car" as "the vehicle described on the Declarations page." *Id.* The declarations page of the Chevrolet policy listed only the 1967 Chevrolet, and the declarations page of the Volkswagen policy listed only the 1969 Volkswagen. *Id.* The medical payments section of both policies provided:

THERE IS NO MEDICAL COVERAGE:

4. FOR MEDICAL EXPENSES FOR *BODILY INJURY:*

a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY *YOU, YOUR SPOUSE,* OR ANY *RELATIVE,* WHICH IS NOT INSURED UNDER THIS COVERAGE[.]

*Id.* at 895–96 (italics in original).

The court found that this portion of the medical payments section of the Volkswagen policy "clearly expresses the intention to limit coverage to injuries caused by the insured vehicle or vehicles[.]" *Id.* at 895. It concluded that "[b]ecause the Volkswagen was not involved in the accident, plaintiff is entitled to no medical coverage under this policy." *Id.*

Likewise, we conclude the State Farm no coverage clauses in policies B and C prohibit those policies from covering bodily injury suffered while occupying the S–10, because the S–10 is not listed on the declaration page of policies B or C.

■ State Farm additionally contends that the Buettners' policies clearly disallow stacking, arguing that the language contained in paragraph 2 under the section addressing the presence of other underinsured motor vehicle coverage precludes the Buettners from collecting in excess of $50,000:

**If There is other Underinsured Motor Vehicle Coverage**

2. If the *insured* sustains bodily injury while *occupying your car* and *your car* is described on the declarations page of another policy providing underinsured motor vehicle coverage:

a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all such underinsured motor vehicle coverage applicable to the accident.

Significantly, the term "your car" is defined in the policy as "the car or the vehicle described on the declarations page" of the policy. Accordingly, this clause applies only in a situation where the insured sustains bodily injury while occupying a car or vehicle listed on both the declarations page of the policy under consideration and also on the declarations page of another policy.

Here, no vehicle listed on one policy is listed on the declarations page of another policy. Specifically, Michele Buettner was injured while occupying the S–10, and the S–10 is not described on the declaration pages of policies B or C. Consequently, the

S–10 does not fall within the definition of "your car" in policies B or C because it is not listed on the declaration page of either of those policies; therefore, this other coverage clause does not grant coverage for bodily injury sustained by Michele Buettner while riding in the S–10. Point denied.

In their second point, the Buettners claim the trial court erred in finding that there was no underinsured motorist coverage under the two policies because State Farm failed to plead or set forth the policy exclusions and the issue was not tried by implied consent. As pointed out by the Buettners, State Farm did not plead or set forth the specific policy exclusions. However, State Farm did state in its Answer that no additional policies were applicable to the loss and that the Buettners' attempt to stack coverages in their policies was in contravention of the provisions of their State Farm policies, and the policies were attached to the parties' Joint Stipulation of Facts.

Although a failure to plead an exclusion as an affirmative defense may cause it to be waived, the party urging waiver needs to object to the introduction of such evidence at trial. *Vega,* 162 S.W.3d at 151 (emphasis in original). Because the Buettners knew that State Farm was relying on the exclusions and tried the case on that basis, the issue is deemed to have been tried by the implied consent of the parties. *Id.* at 151–52. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

ROY L. RICHTER, P.J., and KATHIANNE KNAUP CRANE, J. concur.