**SHELTER MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Jay MacVITTIE and Debra MacVittie, Respondents.**

No. WD 76401.

Missouri Court of Appeals, Western District.

Dec. 24, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2014.

Application for Transfer Denied March 25, 2014.

Bradley C. Letterman, for Appellant.

Jacquelyn Brazas, for Respondents.

Before Division II: MARK D. PFEIFFER, Presiding Judge, JOSEPH M. ELLIS, Judge and VICTOR C. HOWARD, Judge.

VICTOR C. HOWARD, Judge.

Shelter Insurance Mutual Insurance Company ("Shelter") appeals from the trial court's grant of judgment on the pleadings in favor of Jay and Debra MacVittie and against Shelter in the amount of $100,000.00. At issue is the interpretation of an automobile insurance policy's limit of liability provisions. Shelter's position is that Jay and Debra MacVittie's claims are subject to the same "each person" limit because the policy's limit of liability section unambiguously provides that derivative claims are subject to the same "each person" limit available to the injured claimant. Shelter contends, in the alternative, that if the policy language is ambiguous, a separate limit for Debra MacVittie's loss of consortium claim is allegedly beyond the expectations of an ordinary insured. We reverse.

## FACTS

In May of 2012 Jay MacVittie and John McCray were involved in a motor vehicle accident in Callaway County, Missouri. Jay MacVittie asserted a claim against Mr. McCray for personal injuries, and Debra MacVittie, Jay's wife, asserted a claim against Mr. McCray for loss of consortium. Shelter insured Mr. McCray pursuant to an automobile liability policy ("the policy") effective at the time of the accident. The policy has a bodily injury limit of $100,000 each person and $300,000 each accident.

The parties do not dispute that the policy covers the claims of Jay and Debra MacVittie. The disagreement is whether Mrs. MacVittie's loss of consortium claim was subject to (a) the same $100,000.00 "each person" limit as Mr. MacVittie's claim, (b) a separate "each person" limit of $100,000.00, or (c) no "each person" limit whatsoever.

The parties reached a settlement agreement by which Shelter paid Mr. and Mrs.

MacVittie $100,000.00, the MacVitties released any claims against John and Cathy McCray arising out of the accident, and the MacVitties and Shelter agreed to resolve their remaining dispute by submitting it to the Circuit Court of Callaway County (and any appellate court) for resolution. Shelter then filed its action for declaratory judgment, and the MacVitties filed a counterclaim for declaratory judgment. Subsequently the parties filed cross motions for judgment on the pleadings. The trial court entered judgment in favor of the MacVitties, finding that "Jay MacVittie's claim and Deborah (sic) MacVittie's claim are not subject to the same 'each person' limitation in [Shelter]'s policy. Debra MacVittie's claim for loss of consortium is found to be a separate claim." The court then awarded the MacVitties $100,000.00 for the loss of consortium claim. This appeal by Shelter followed.

## STANDARD OF REVIEW

Review of a grant of judgment on the pleadings requires this Court to determine "whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *Emerson Electric Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 12 (Mo. banc 2012) (internal quotations omitted). The non-moving party's well-pleaded facts are treated as admitted for purposes of the motion. *Id.* The trial court's judgment will be affirmed only "if the facts pleaded by the petitioner, together with the benefit of all reasonable inferences drawn therefrom, show that petitioner could not prevail under any legal theory." *Id.* " 'The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews de novo.' " *American Nat'l. Prop.*

& Cas. Co. v. Wyatt, 400 S.W.3d 417, 419 (Mo.App.W.D.2013) (quoting Burns v. Smith, 303 S.W.3d 505, 509 (Mo. banc 2010)). In an insurance contract, "the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. banc 2007) (internal citations omitted). "When analyzing an insurance contract, the entire policy and not just isolated provisions or clauses must be considered." Rice v. Shelter Mut. Ins. Co., 301 S.W.3d 43, 47 (Mo. banc 2009) (internal quotation and citations omitted).

## ANALYSIS

■ In its first point on appeal, Shelter argues that Jay and Debra MacVittie's claims are subject to the same "each person" limit because the policy's limit of liability section unambiguously provides that derivative claims are subject to the same "each person" limit available to the injured claimant. Shelter's assertion relies on the language in the liability limits section of the policy stating that the "each person" limit on liability "includes all damages[1] to others *resulting from* that **person's bodily injury** *whether direct or derivative*[2] *in nature*." (underline emphasis added). Shelter maintains that specifying the inclusion of damages "derivative in nature" unambiguously brings Mrs. MacVittie's loss of consortium claim under the same "each person" limit as Mr. MacVittie's personal injury claim.

The MacVitties, on the other hand, contend that Shelter's decision to specifically define "**damages**" in the policy as "money . . . that an **insured** is legally obligated to pay another **person** for **bodily injury, property damage,** or **consequential loss,** caused by an **occurrence** resulting from that **insured's ownership, maintenance,** or **use,** of the **described auto**" results in "**damages**" not including claims for loss of consortium. The MacVitties argue that because "**damages**" as defined in the policy does not include loss of consortium claims, and the policy's "each person" limit only applies to "**damages,**" Mrs. MacVittie's loss of consortium claim does not fall under the "each person" limit of liability.

■ Interpretation of an insurance policy is governed by the same rules as interpretation of any contract. Vega v. Shelter Mut. Ins. Co., 162 S.W.3d 144, 147 (Mo.App.W.D.2005). An unambiguous insurance policy will be enforced as written unless a statute or public policy requires coverage. Id. An ambiguity in the language of an insurance policy is construed against the insurer, and exists when there is "duplicity, indistinctness, or uncertainty in the meaning of words used in the contract[; or] . . . language . . . [that] is reasonably and fairly open to different constructions." Id. In determining whether policy language is ambiguous, it is "considered in the light in which it would normally be understood by the lay person who bought and paid for the policy." Id. The burden of proving the applicability of an exclusion from coverage is on the insurer. Id.

■ Generally, if a term is defined in an insurance policy, a court will use that definition in its interpretation and look nowhere else. Vega, 162 S.W.3d at 147. However, "[w]ords or phrases in a policy must be interpreted in the context of the

---

1. All words in bold appear as they do in the policy. Any emphasis by this Court will be shown by underline.

2. "Under Missouri Law, a [wife's] claim for loss of consortium is derivative of [her husband's] claim for bodily injury." Ward v. Am. Family Ins. Co., 783 S.W.2d 921, 923 (Mo. App.E.D.1989) (internal citations omitted).

policy as a whole and cannot be considered in isolation." *Shelter Mut. Ins. Co. v. Sage,* 273 S.W.3d 33, 36 (Mo.App.W.D. 2008). Furthermore, "[s]eeming contradictions in an insurance policy must be harmonized if reasonably possible." *Id.*

The relevant language in the policy is as follows:

DEFINITIONS

In this policy, the words shown in bold type have the meanings stated below unless a different meaning is stated in a particular coverage or endorsement.

. . . .

**Bodily Injury** means:

(a) A physical injury;

(b) A sickness or disease of the body;

(c) The physical pain and physical suffering that directly results from (a) or (b), above; or

(d) A death that directly results from (a) or (b), above.

The following medical conditions are excluded from the definition of **bodily injury**:

(a) Mental injuries;

(b) Sicknesses or diseases of the mind;

(c) Mental anguish; and

(d) Emotional distress;

unless such mental or emotional condition is diagnosed by a medical doctor or licensed psychologist and directly results from **bodily injury** to the **individual** on whose behalf the **claim** is made.

. . . .

**Consequential loss** means a monetary loss that results from **property damage** other than the cost of repairing or replacing the property itself. **Consequential loss** includes:

(a) The diminished value of property subsequent to its repair or the replacement of one or more of its parts;

(b) The diminished value of the property resulting from the use of a **replacement part** that has a different warranty than the damaged part; and

(c) Monetary loss resulting from the loss of the use of the damaged property

during the time between the **accident** and its return to service.

. . . .

**Property damage** means a demonstrable physical damage to real or personal property. It includes the stealing of any personal property. It does not include any amount payable by any **insured** as a result of an agreement of any kind, including a rental agreement.

. . . .

PART I—**AUTO LIABILITY COVERAGES**

. . . .

**We** will pay **damages** on behalf of an **insured;** but this agreement is subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy.

. . . .

**Damages** means money, including prejudgment interest, that an **insured** is legally obligated to pay another **person** for **bodily injury, property damage,** or **consequential loss,** caused by an **occurrence** resulting from that **insured's** **ownership, maintenance,** or **use,** of the **described auto** or a **non-owned auto.** The following items are excluded from the definition of **damages:**

(a) **Punitive damages;**

(b) Additional amounts payable under a law that imposes an obligation to pay some multiple of the actual damage caused by the **insured;** and

(c) An obligation created solely by a contract.

. . . .

LIMIT OF **OUR** LIABILITY UNDER COVERAGE A AND COVERAGE B

The limits of **our** liability for Coverage A and Coverage B are stated in the **Declarations** and are further subject to the following limitations:

. . . .

(2) The limit of liability stated in the **Declarations** for Coverage A for "each **person**" is the limit of **our** liability for all **damages** arising out of one **person's bodily injury** from one **occurrence**. This limit includes all **damages** to others resulting from that **person's bodily injury** whether direct or derivative in nature.

 Part I of the policy clearly sets forth that the coverage it provides is "subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy." Moreover, the language of the "each person" limitation imposes a clear limit on the coverage provided by Part I of the policy, which plainly includes claims derivative to bodily injury claims for which coverage is provided by Part I. The MacVitties' position that the narrow definition of damages places Mrs. MacVittie's loss of consortium claim outside the "each person" limit of the policy ignores the context of the policy as a whole and considers the term in isolation, which we cannot do. *Sage*, 273 S.W.3d at 36.

As stated previously, the parties do not dispute that the insuring agreement covers both the physical injury claim of Mr. MacVittie *and* Mrs. MacVittie's loss of consortium claim. This is important to our contextual review of the policy as a whole. The insuring agreement plainly states: "**We** will pay **damages** on behalf of an **insured**; but this agreement is subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy."

If we insert the relevant "damages" definitional language from the policy, the insuring agreement would read as follows: "**We** will pay money . . . that an **insured** is legally obligated to pay another **person** for **bodily injury** . . . caused by an **occurrence** resulting from that **insured's** . . . **use** of the **described auto**."

In *Ward v. Am. Family Ins. Co.*, 783 S.W.2d 921 (Mo.App.E.D.1989), the court examined an almost identical insuring agreement in the context of an uninsured motor vehicle loss of consortium claim. At page 922 of the *Ward* opinion, the insuring agreement was identified from the policy as follows: "We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle."

Although the *Ward* insuring agreement involved uninsured motor vehicle coverage instead of liability coverage, what is significant about *Ward* is that (1) the definition of "bodily injury" was virtually identical to the present case; (2) the insuring agreement was virtually identical to the present case; and (3) the *Ward* court concluded that the insuring agreement language covered derivative loss of consortium claims, though not as a separate and distinct "bodily injury." *Ward* at 922–23. Stated another way, the *Ward* court concluded that the phrase "damages for bodily injury" included loss of consortium claims that were derivative to a spouse's separate claim for physical injuries. *Id.*

Here, after inserting the "damages" definitional language into the insuring agreement, the pertinent phrase from the insuring agreement states that Shelter will pay "money . . . for bodily injury." Following the precedent of *Ward*, then, it is clear that the insuring agreement contemplates payment of derivative loss of consortium

claims. Again, this is undisputed by the parties.

Regarding Shelter's limit of liability clause, the language is unambiguous: "The limit of liability stated in the **Declarations** for "each **person**" is the limit of **our** liability for all **damages** arising out of one **person's bodily injury** from one **occurrence**. This limit includes all **damages** to others resulting from that **person's bodily injury** whether direct or derivative in nature."

As the *Ward* court concluded: "While admittedly covered by the insuring clause, plaintiff's [loss of consortium] derivative damages do not constitute a separate and distinct bodily injury.' It logically follows that all losses arising from one person's physical injuries must be included within the each person' limitation." Given the extremely similar policy language from *Ward*, we find that the conclusion of *Ward* is also applicable here.

To accept the MacVitties' argument that the definition of "damages" does not include loss of consortium claims in the first instance would render the policy contradictory, resulting in the policy's insuring agreement (1) not providing coverage for a loss of consortium claim, and simultaneously (2) limiting the coverage it does not provide in another section. This argument is thus without merit, because "[s]eeming contradictions in an insurance policy must be harmonized if reasonably possible." *Sage*, 273 S.W.3d at 36.

Shelter is correct in its argument that Jay and Debra MacVittie's claims are subject to the same "each person" limit under the applicable auto insurance policy because the limit of liability section provides that derivative claims are subject to the same "each person" limit available to the injured claimant. The trial court erred in granting judgment on the pleadings in favor of Jay and Debra MacVittie and

against Shelter in the amount of $100,000.00.

Because we find Shelter's first point dispositive, we decline to reach their second point. The judgment of the trial court is reversed and the case is remanded for entry of judgment consistent with this opinion.

All concur.