

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

PAUL H. COWIN, ET AL.,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Appellants,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀WD78020
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
SHELTER MUTUAL INSURANCE⠀⠀⠀)⠀⠀⠀⠀⠀Opinion filed:  May 5, 2015
COMPANY, ET AL.,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Respondents.⠀⠀⠀⠀⠀⠀)

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## THE HONORABLE JAMES F. KANATZAR, JUDGE

Before Division Two:  Lisa White Hardwick, Presiding Judge,
Victor C. Howard, Judge and Cynthia L. Martin, Judge

Paul and Doris Cowin brought an equitable garnishment action against Shelter Mutual Insurance Company seeking to satisfy a judgment against its insured, Jonathon Parsons Jr., in their personal injury case arising out of a car accident.  On cross-motions for summary judgment, the trial court entered summary judgment in favor of Shelter finding that the Cowins' claim against Mr. Parsons fell outside the coverage of the insurance policy and Shelter owed no duty to pay the claim.  On appeal, the Cowins contend that trial court erred in finding no coverage because Mr. Parsons was driving a non-owned auto as defined in the policy.  The judgment is affirmed.

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. "Summary judgment is frequently used in the context of insurance coverage questions." *Assurance Co. of America v. Secura Ins. Co.*, 384 S.W.3d 224, 230 (Mo. App. E.D. 2012). The facts in this case are not disputed; the issue is one of interpretation of the insurance policy. As with any other contract, the interpretation of an insurance policy, particularly the question of coverage, is a question of law that an appellate court determines *de novo*. *Id.*

Paul and Doris Cowin were injured in an automobile accident on February 20, 2009, when a 1987 Western Star log truck owned by Todd Lumber Company and driven by its employee, Jonathon Parsons Jr., struck the rear of the Cowins' automobile. Mr. Parsons was authorized by his employer to use the log truck for business purposes. He did not have authority to use the log truck for personal purposes. He did not need to ask specific permission before using the truck. Mr. Parsons used the log truck for business purposes in excess of 50 times in the nine months prior to the accident without seeking specific permission for those uses. On the day of the accident, Mr. Parsons was using the log truck for business purposes, and he did not seek permission that day to use it. The log truck was insured by an insurance policy through State Farm Mutual Automobile Insurance Company with limits of $100,000 per claim.

At the time of the accident, Mr. Parsons had an automobile insurance policy on his 1999 Ford F250 through Shelter Mutual Insurance Company. The insuring agreement contained in the Shelter policy provided bodily injury coverage of $50,000 each person and $100,000 each accident. It contained the following relevant language:

2

INSURING AGREEMENT FOR COVERAGES A AND B
Subject to the limits of **our** liability for these coverages stated in the **Declarations**, **we** will pay **damages** for an **insured**, if:
(1) that **insured** is legally obligated to pay those **damages**; and
(2) the **accident** that caused those **damages** arose out of the **ownership** or **use** of the **described auto** or a **non-owned auto**.

The Shelter policy defined "described auto" in pertinent part as:

**Described auto** means the vehicle described in the **Declarations**, but only if a **named insured owns** that vehicle.

The policy defined "non-owned auto" in pertinent part as:

**Non-owned auto** means any **auto** being **used**, **maintained**, or **occupied** with **permission**, other than…
(c) an **auto** that **you** or any **resident** of **your** household has **general consent** to **use**.

"General consent" was defined in the policy in pertinent part as:

**General consent** means the authorization of the **owner** of an **auto** of another to **use** it on one or more occasions without the necessity of obtaining **permission** for each **use**. **General consent** can be expressed or implied.

Shelter denied coverage for the accident.

The Cowins filed a personal injuries suit against Todd Lumber Company and Mr. Parsons. Thereafter, the parties entered into a settlement agreement, and a consent judgment was entered by the Crawford County Circuit Court. The consent judgment was in the amount of $300,000 with execution of the judgment limited to available insurance coverage. State Farm, which insured the log truck, satisfied $200,000 of the judgment; and the Cowins initiated this equitable garnishment action against Shelter seeking to collect the balance of the judgment.

The Cowins and Shelter filed cross-motions for summary judgment. In Shelter's motion, it argued that because the damages sought by the Cowins arose from Mr. Parsons's use of the log truck owned by his employer that was neither the "described auto" or a "non-owned auto" under the policy, those damages were not covered by the policy and it was not obligated to satisfy any

portion of the judgment. The Cowins argued, on the other hand, that the damages sought by them arose from Mr. Parsons's use of a non-owned auto as defined by the policy.

The trial court granted Shelter's motion for summary judgment and denied the Cowins' motion. It found that the definitions of non-owned auto and general consent in the Shelter policy were clear and unambiguous and that the Cowins' claim fell outside the coverage of the Shelter policy and Shelter owed no duty to pay the claim in this case. This appeal by the Cowins followed.

In their two points on appeal, the Cowins contend that the trial court erred in finding no coverage under the Shelter policy for their claims against Mr. Parsons. First, they contend that Mr. Parsons was driving an auto that he did not have general consent to use; therefore, it was a covered non-owned auto as defined in the policy. Alternatively, in point two, the Cowins argue that the term "general consent" is ambiguous and should be construed in favor of coverage. Both points are addressed together.

The general rule in interpreting an insurance policy is to give the language of the policy its plain meaning. *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. banc 2014). "The entire policy and not just isolated provisions must be considered." *Id.* If the policy's language is not ambiguous, the policy must be enforced as written. *Id.*

"An ambiguity exists where there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Fanning v. Progressive Northwestern Ins. Co.*, 412 S.W.3d 360, 364 (Mo. App. W.D. 2013)(internal quotes and citation omitted). If an ambiguity exists, the language of the policy is construed against the insurer. *Id.* In determining whether policy language is ambiguous, it is considered in the light in which it would be understood by the lay person who bought and paid for the policy. *Id.* "[C]ourts may not unreasonably distort the

4

language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists." *Allen v. Continental Western Ins. Co.*, 436 S.W.3d 548, 554 (Mo. banc 2014)(internal quotes and citation omitted).

Generally, if a term is defined in the insurance policy, a court looks to that definition and nowhere else. *Vega v. Shelter Mut. Ins. Co.*, 162 S.W.3d 144, 147 (Mo. App. W.D. 2005). "If a term within an insurance policy is clearly defined, the policy definition controls." *Id.* (internal quotes and citation omitted). "If a conflict arises between a technical definition of a term and the meaning of the term which would reasonably be understood by the average lay person, the lay person's definition will be applied, unless it is obvious the technical meaning was intended." *Id.* (internal quotes and citation omitted). The fact that the parties disagree on the interpretation of a term in an insurance policy does not render the term ambiguous. *Id.* at 150.

Under the Shelter policy, coverage is provided for damages arising out the ownership or use of the described auto or a non-owned auto. It is undisputed that the log truck was not the described auto in the Shelter policy. The dispute between the parties is on the question of whether it was a non-owned auto. The policy defines a non-owned auto as any auto used, maintained, or occupied with permission but specifically excludes an auto that the insured has general consent to use. General consent is defined in the policy. It is "the authorization of the owner of an auto of another to use it on one or more occasions without the necessity of obtaining permission for each use. General consent can be expressed or implied."

The Cowins do not argue that Mr. Parsons was not authorized to use the log truck on one or more occasions without first seeking permission for each use. Instead, they contend that because Mr. Parsons only had permission to use the log truck for limited purposes, i.e. only for business, he did not have general consent to use the log truck.

5

To support their contention, the Cowins rely on two cases, *Allstate Insurance Company v. Ibrahim*, 243 S.W.3d 452 (Mo. App. E.D. 2007), and *Spicer by Spicer v. Jackson by Berra*, 853 S.W.2d 402 (Mo. App. W.D. 1993), which involved non-owned auto clauses similar but not identical to the provision in this case. In those cases, the policy definitions of non-owned auto specifically excluded any auto furnished or available for regular use by the insured. *Ibrahim*, 243 S.W.3d at 454; *Spicer*, 853 S.W.2d at 403. In determining whether the vehicles in question in those cases were furnished or available for the regular use of the insured, the appellate court considered the following factors: (1) type and length of use; (2) purpose for which the non-owned auto was furnished; (3) whether the use and purpose to which the vehicle was put was in harmony with or violative of the objective of the non-owned auto clause; and (4) any other pertinent facts. *Ibrahim*, 243 S.W.3d at 458; *Spicer*, 853 S.W.2d at 404 (both citing *State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co.*, 477 S.W.2d 421, 424 (Mo. banc 1972)).

In *Ibrahim*, the vehicle in question was found to be available for the insured's regular use and thus excluded from coverage because the insured was leasing the car from his friend, he used the car on a daily basis sometimes for personal errands, the vehicle was kept at the insured's home, and there were no restrictions regarding how often or for what purpose the insured used the vehicle. 243 S.W.3d at 458. Similarly, the vehicle in *Spicer* was found to be available for the insured's regular use and excluded from coverage where the insured used the vehicle for daily business throughout each work day for a continuous period of six months, the vehicle was kept at her home and driven to and from work assignments without further authorization, and the insured was responsible for maintenance of the car. 853 S.W.2d at 405.

Based on those cases, the Cowins argue that general consent means consent without limitation or restriction and suggests that any grant of authority falling short of that given in

6

*Ibrahim* and *Spicer* cannot be general consent. Such argument, however, ignores that general consent is expressly defined in the policy in this case. Consequently, it is unnecessary to look at other cases addressing different policy language to discern the meaning of the term general consent. The terms non-owned auto and general consent are clearly defined in the policy. The definition of general consent does not require consent to use the vehicle for any or all purposes. The unambiguous language of the definition requires only that the insured had the auto owner's permission to use the vehicle on one or more occasions without the necessity of obtaining permission for each use. The uncontroverted facts of this case satisfy the definition and bar coverage. Mr. Parsons was authorized by his employer to use the log truck for business purposes, and he did not need to ask specific permission before using it. He used the log truck for business purposes in excess of 50 times in nine months prior to the accident without seeking specific permission for those uses. On the day of the accident, Mr. Parsons was using the log truck for business purposes, and he did not seek permission that day to use it.

The Cowins' argument that general consent must mean unrestricted consent to use for any purpose essentially asks this court to add language to the policy definition of general consent. It is well settled that a court will not add language to an insurance policy. *Burns v. Smith*, 303 S.W.3d 505, 511 (Mo. banc 2010). A court's function is to construe, not make, insurance contracts. *Central Sur. & Ins. Corp. v. New Amsterdam Cas. Co.*, 222 S.W.2d 76, 80 (Mo. banc 1949). Where, as here, a term is specifically defined in the policy, a court will look to that definition and nowhere else. *Vega*, 162 S.W.3d at 147. And where, as here, the policy's language is not ambiguous, the policy is enforced as written. *Floyd-Tunnell*, 439 S.W.3d at 217. The uncontroverted facts of this case reveal that Mr. Parsons was authorized to use the log truck on one or more occasions without first seeking permission for each use. Mr. Parsons had general

7

consent to use the log truck; thus, the truck was not a non-owned auto and was excluded from coverage.[1]

Such holding is consistent with the rationale behind non-owned auto provisions in policies, which is to cover occasional or incidental use of other cars without payment of an additional premium but to exclude coverage for habitual use of other cars, which would increase the risk on the insurance company without the corresponding increase in the premium. *Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 38 (Mo. App. W.D. 2008). Mr. Parson's use of the log truck was more than incidental and to hold otherwise would extend liability under the policy well beyond what the parties intended. The trial court did not err in granting summary judgment in favor of Shelter. The points are denied.

The judgment is affirmed.

_____
VICTOR C. HOWARD, JUDGE

All concur.

---

[1] The Cowins also argue for the first time in their reply brief that the uncontroverted facts show that Mr. Parsons received permission from his employer for each use of the log truck, therefore, he did not have general consent to use it. This argument comes too late and is not preserved. *See Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 784 (Mo. App. W.D. 2008)(issues not raised by appellants in their opening brief cannot be raised for the first time in the reply brief and are not properly preserved). Even if preserved, however, the argument is without merit. While the uncontroverted facts show that on any given day, Mr. Parsons's use of the log truck would be based on what specific job needed to be done for business as discussed by he and his employer, the uncontroverted facts did not show that Mr. Parson was required to secure permission each time he used the truck. Instead, it was undisputed that Mr. Parsons was authorized to use the log truck for business purposes without seeking permission prior to each use.